IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 7, 2003 Session

# RUTHIE CURBOW v. JAMES DOUGLAS STUCKI

**Appeal from the Juvenile Court for Williamson County**
**No. 33563     Lonnie Hoover, Judge**

---

**No. M2001-02908-COA-R3-JV - Filed October 28, 2003**

---

In this case, Ruthie Ann Curbow appeals from a custody and support proceeding in Williamson County Juvenile Court.  On the day of the hearing, parties and counsel appeared in camera for a pre-trial conference.  Upon announcement of an apparent settlement in open court, Mother expressed disagreement with the terms of the settlement and a desire to preserve her right to appeal.  The trial court determined that no settlement existed and trial on the merits proceeded with proof from all parties.  The court entered an order awarding joint custody with Father as primary custodian under the statutory fitness comparison.  Mother appeals.  We affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM CHARLES LEE, SP. J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Ruthie Curbow.

James Robin McKinney, Jr., Nashville, Tennessee, for the appellee, James Douglas Stucki.

## OPINION

Mother and Father began dating in May of 1998.  The child who is the subject of this custody action was born on April 3, 1999.  In August of 2000 Mother and Father quit dating.  In September of 2000 Father began dating his current wife.  On the 20th of that month, Mother filed the petition in Juvenile Court for Williamson County requesting custody and child support.  In that petition Mother alleged, *inter alia*, the following:

9.      That during the times that the minor child, JAMES WILLIAM STUCKI, visits overnight with Father in his home, the minor child does not have his own bedroom.  Mother fears that unless Father is restrained he will have

overnight female guests to whom he is not married and to the detriment of the minor child, JAMES WILLIAM STUCKI;

10. That a restraining order be issued restraining Father from having female guests overnight during times when the minor child, JAMES WILLIAM STUCKI, spends the night with Father pending a final hearing in this matter;

11. That Father is fundamentally opposed to immunizations for children and does not believe in giving children prescribed medicine. Mother fears that unless restrained Father will fail to immunize the parties' minor child, JAMES WILLIAM STUCKI, or fail to give him prescribed medicine, if needed; and

12. That a restraining order be issued restraining Father from preventing the parties' minor child from being immunized and/or from preventing the parties' minor child from receiving any and all prescribed medications in the prescribed dosages, as ordered by the child's pediatrician, pending a final hearing in this matter.

The Father responded to the petition and filed a counter-petition seeking sole custody of the parties' minor child. The counterclaim went unanswered. During the ensuing litigation several altercations occurred between the parties regarding visitation. Despite the disagreements between the parties it seems that on the date assigned for hearing, October 24, 2001, the parties had worked out a settlement in chambers. The transcript of the hearing reveals sixteen pages of discussion concerning the terms of an apparent agreed compromise. Mother indicated her disagreement through counsel.

      THE COURT: Will go into an education trust for the child. Is all that agreeable? Is that agreeable with you, ma'am?

      MS. HOOD: Well, Your Honor, again, this is not what she wants so she is not going to agree.

      THE COURT: Well, do you object to it?

      MS. HOOD: But we're not going to object that this is the order of the Court and not have a hearing. I think at the end of the day if we have a hearing, this is going to be the Court's order.

      THE COURT: I believe it will too.

      MS. HOOD: So we're not objecting to this order not having a hearing.

      THE COURT: You know, we've got this about as even and fair as it can be. You don't object to it, ma'am?

      MS. CURBOW: No, sir, but could I add one thing if I could, please?

      THE COURT: Yes, if you have to, go ahead.

MS. CURBOW: There have been numerous times that Mr. Stucki has not allowed me to talk to my son, and I was wondering if it would be okay, Your Honor, if I can have phone privileges with my son.

THE COURT: See, this is another one of those things. I'm not going to get into every last aspect of your and his life. I mean you-all are grownups.

MS. CURBOW: Yes, sir.

THE COURT: And if you want to spend it, you know, hiring lawyers every three minutes coming in and out of court and acting like children, then you can do that.

But I've already told you the thing to do is to talk to each other and try to work these little simple things out between yourselves. You-all just sit down and discuss it and work out some sort of phone arrangements or some sort of agreements.

If you have a problem, simply call the man. And, sir, it's way in your best interest to let her talk her son when you have him for visitation.

Shortly after this exchange counsel for Petitioner made the following statement in open court, whereupon the court vented its frustration at the understandably difficult task of facilitating what seems to have been a difficult effort at compromise:

MS. HOOD: Your Honor, I do need to make clear to reserve her appeal rights that she's not agreed to the order. What we're agreeing is that this is the order of the court, but its not an agreed order.

THE COURT: Well now, if she's going to appeal, we need to start - - we can just start calling witnesses and let your legal bill run up to, you know, three kazillion dollars or so, whatever it's going to be. If your client wants to appeal - -

MS. HOOD: There is probably going to be an appeal, Yes, Your Honor. What I was saying is that I think at the end of the day, Your Honor is going to rule this way. And as such - -

THE COURT: Okay. There's going to be an appeal? All those going to testify, raise you right hand and be sworn. (Witnesses sworn.) Call your first witness:

MR. McKINNEY: Judge, I call the Rule.

THE COURT: I'm going to hear this in about ten-minute increments and take about 15-minute breaks every ten minutes. It's been a hard day.

It does bear noting for the purpose of Appellant's argument that prior to statements of counsel regarding preserving the right to appeal, the court had indicated that under the compromise as announced Mother would be primary custodian. Following that lengthy discussion, the juvenile court conducted a trial on the merits, during which it heard proof from both parties. The Petitioner testified on her own behalf. In addition to her own testimony, Petitioner also presented Joy Drury and Jenny Rominger, two of the workers at the child's daycare in Williamson County in her case in chief. Respondent presented his own testimony as well in his case in chief. He also presented the

testimony of Allison Stucki, his daughter from a previous marriage, Lori Stucki, his wife, and Deborah Cochran, a mutual friend of the parties who introduced them back in 1999. The Mother offered as rebuttal proof the testimony of Terry Snow, a witness whose relationship to the Plaintiff is unclear, and Margaret Hawkins, the child's maternal grandmother. After considering all of the testimony, the juvenile court entered its order on November 2, 2001, in which it determined that the Respondent Father was comparatively more fit than the Mother under the criteria set forth in Tennessee Code Annotated section 36-6-106:

THIS CAUSE came to be heard on the 24th day of October, 2001, upon the setting for Final Hearing of the Petition for Custody and To Set Child Support filed by our Petitioner, Ruthie Curbow, the testimony of witnesses and production of exhibits, statements of counsel, and upon the entire record in this cause, the Court finds that in accordance with the factors set forth in T.C.A. § 36-6-106 as follows:

1. The love, affection and emotional ties existing between the parents and child are equal between the parties;
2. That father is better able to provide for the child financially;
3. That the continuity of placement of the child has been equal between the parents;
4. That father has remarried and has two other children in Williamson County, Tennessee. Mother's family lives several hours from the Williamson County. Therefore, the stability of the family weighs in favor of Father.
5. That both parents appear equally fit to mentally and physically care for the child.
6. T.C.A. § 36-6-106(6) is not applicable to the child due to his age;
7. T.C.A. § 36-6-106(7) is not applicable to the child due to his age;
8. There is no evidence that either parent has been abusive towards the child;
9. There is no evidence that either parent allows the child to have contact with any persons of immoral character or improper behavior; and
10. That it is likely that Mother brought this action for vindictive or financial purposes.

Therefore, in light of the testimony of witnesses, exhibits introduced into evidence and in accordance with the above-referenced factors, the Court finds that Father is the fit and proper person to care for the child.

It is hereby ORDERED, ADJUDGED and DECREED that the parties shall be awarded joint custody and that Father shall be awarded primary physical custody of the minor child. Mother shall be entitled to liberal visitation including every Tuesday and Thursday night and every other weekend from Friday at 6:00 p.m. to

Sunday at 6:00 p.m. Mother shall be entitled to four consecutive weeks visitation during the summer with the minor child. Standard holiday visitation shall apply.

On Petitioner's motion this order was amended as follows:

It is, therefore, ORDERED, ADJUDGED and DECREED that the weekday visitation on Tuesdays and Thursdays shall be from 6:00 p.m. until 8:00 a.m. the following day.

It is further ORDERED, ADJUDGED and DECREED that the Mother shall give notice by April 1, 2003 and each year thereafter of when she intends to exercise summer visitation.

It is further ORDERED, ADJUDGED and DECREED that the Mother shall maintain major medical insurance on behalf of the minor child. The parties shall equally divide all medical expenses not covered by insurance.

It is further ORDERED, ADJUDGED and DECREED that the component of the Motion to specify the time of the exchanges for the major holidays for the visitation shall be denied.

It is further ORDERED, ADJUDGED and DECREED that notwithstanding the above, the Court's previous Order remain in full force and effect.

From the final order of the court awarding primary custody to the Father, Mother appeals. Mother argues on appeal that the court erred in refusing to enter an Agreed Order and that the court erred in finding the Father comparatively more fit.

I. Agreement

The difficulty with the position of Appellant is that there is no agreement - - there was no agreement at the time of the hearing - - and there never has been an agreement. The parties and counsel had an in-camera conference with the trial court and apparently reached what the trial court thought was a settlement agreement. When court opened, the trial court was in the process of stating the terms of the apparently agreed settlement when Appellant announced her disagreement with portions of the settlement but was content to have the trial court enter an agreed order in conformity with the portions of the alleged agreement with which she agreed while also preserving her right to appeal as to the portions of the order with which she disagreed. If the trial court were to sign such an order, any appellate court would have to set the order aside on the basis that there was no evidence in the record to support the trial court finding. The trial judge was not about to embark upon such an exercise in futility and very correctly said "call your first witness."

A consent judgment is entirely dependent upon consent by all parties to all provisions thereof.

The general rule defining the power of a court to enter a consent judgment is set forth in 49 C.J.S. Judgments § 174(b), as follows:

-5-

The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment.

In making reference to the general rule in *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288 (1951), the court emphasized that:

A valid consent judgment cannot be rendered by a court when the consent of one of the parties thereto is wanting. It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court.

The reason for the rule is that a consent judgment does not represent the reasoned decision of the court but is merely the agreement of the parties, made a matter of record by the court. *Van Donselaar v. Van Donselaar*, 249 Iowa 504, 87 N.W.2d 311 (1958). And, until entered by the court, the matter being the question of an agreement between the parties, either party may repudiate the agreement because of an actual or supposed defense to the agreement. This is not to say that the compromise agreement may not be a binding contract, subject to being enforced as other contracts, but only that the court may not enter judgment based on the compromise agreement, when it has notice that one of the parties is not longer consenting to the agreement for whatever reason.

*Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599-600 (Tenn. 1987); *see also Environmental Abatement v. Astrum, R.E.*, 27 S.W.3d 530 (Tenn.Ct.App. 2000).

Upon this Court's review of the statements of the Petitioner as reflected in the transcript there can be no doubt that one of the elements of the contract was lacking, i.e. mutuality of assent. Without consent there can be no contract; without the contract there can be no decree. By her own assertion through counsel, Plaintiff stated the order entered by the court would not be "an agreed order." As such there is no error in the court's refusing to enter a consent decree and proceeding with a trial on the merits.

II.     Comparative Fitness

The second issue on appeal concerns the court's comparative fitness determination under Tennessee Code Annotated section 36-6-106. Appellate courts afford broad discretion to the trial courts in their determination of custody and visitation arrangements. *See Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn.Ct.App. 1996); *D. v. K.*, 917 S.W.2d 682 (Tenn.Ct.App. 1995); *Nichols v. Nichols*, 792 S.W.2d 713 (Tenn. 1990). As has been said by this Court, "custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility . . ." *Gaskill*, 936 S.W.2d, at 631. Appellate courts are thus understandably reluctant to interfere with the trial court's reasonable exercise of its broad discretion. *Id.*; *see also Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.Ct.App. 1991)(citing *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478,

483, 327 S.W.2d 47, 49 (1959), findings of the trial court which are dependent upon witness credibility are entitled to great weight on appeal.)  The trial court was presented with several witnesses' testimony concerning the love, affection and emotional ties between both parents and the child; the disposition of each parent to provide life necessities for the child; the degree to which the Mother had been the primary care giver up to the point of the custody hearing.  The trial court heard from the Mother concerning Father's initial reluctance to exercise visitation and eventual bonding with the child.  Likewise, the trial court heard of Mother's need to find daycare for the child in the absence of any other family support.  The trial court heard testimony that suggested that the child would need to be in daycare 10.5 hours a day should Mother be primary custodian and Father be awarded standard visitation of every other weekend and one night per week.  The trial court also heard ample testimony concerning the beneficial effects of the liberal visitation exercised by the Father up to the initial hearing and through the final hearing of October 24, 2001.  The trial court heard statements from both parties suggesting, at the very least, problems with visitation while Mother was the primary custodian.  Father testified that the child had already been immunized, indeed had his own room and that the only females in the house were the step-mother and the father's daughters from a previous marriage.  Reviewing the record before us we find that the evidence presented to the trial court and preserved in the record does not preponderate against the court's finding of fact.  *See* Tenn. R. App. P. 13(d).  The order of the trial court is affirmed in all respects.  The cause is remanded to the court for further proceedings.  Costs on appeal are assessed against Appellant for which execution may issue.


_____

WILLIAM B. CAIN, JUDGE