# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 27, 2012 Session

## STEPHANIE S. JERNIGAN v. LEONIDAS J. JERNIGAN

**Appeal from the Circuit Court for Wilson County**
**No. 4945DVC      Clara W. Byrd, Judge**

---

**No. M2011-01044-COA-R3-CV - Filed April 16, 2012**

---

The trial court granted a divorce to the mother of two children, named her as their primary residential parent, and awarded the father temporary visitation with the children. The father subsequently entered into an agreed order that suspended his visitation, with a provision that visitation was to resume only upon the recommendation of the children's counselor. The mother eventually filed a motion to terminate the father's visitation, while the father filed a petition for contempt against the mother and also sought to have his visitation restored. The court appointed a guardian ad litem, who recommended against resuming visitation between the father and his children. By that time, the father had not seen his children for over four years. The court dismissed the father's petition without an evidentiary hearing. We vacate the trial court's order and remand this case for a prompt evidentiary hearing on the father's petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Jonathan Jackson Pledger, Franklin, Tennessee, for the appellant, Leonidas J. Jernigan.

Shawn J. McBrien, Lebanon, Tennessee, for the appellee, Stephanie S. Jernigan.

# MEMORANDUM OPINION[1]

## I. DIVORCE AND VISITATION

The only issue in this appeal is whether the trial court acted within its authority when it dismissed a father's petition to restore his right to exercise visitation with his children without affording the father an evidentiary hearing on the petition. It is clear to us that the father was entitled to a hearing, so we must vacate the trial court's order. For the sake of completeness, however, we will summarize the facts of the case, as revealed by the record below.

Stephanie Jernigan ("Mother") and Leonidas Jernigan ("Father") married in 1988. Their daughter was born on February 2, 1994. Their son was born on November 27, 1995. In March of 2005, Mother filed a complaint for legal separation in the Circuit Court of Wilson County, which she later amended by making it a complaint for divorce. Father filed an answer and counter-claim for legal separation.

Mother subsequently filed a motion for a restraining order, for temporary support and to establish a visitation schedule for Father. She asked the court to restrain Father from coming about her, calling her or entering her home for any reason. For his part, Father filed a motion to restrain Mother from discussing their marital problems in public and to compel her to verbally communicate with him about the children. He also proposed a visitation schedule that would allow him to have the children every weekend except for the first weekend in each month.

The trial court conducted a hearing on both motions on November 12, 2005, which resulted in an order for the payment of child support and a temporary visitation schedule that gave Father visitation on the second and fourth weekend of each month. The court's order also established some basic ground rules for communication between the parties. The divorce hearing was conducted on February 7, 2006. At the conclusion of testimony, the court announced a decision from the bench that was later memorialized in its order of March 27, 2006. We will discuss the court's order later in this opinion.

---

[1]Rule 10 of the Rules of the Court of Appeals reads as follows: "This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated 'MEMORANDUM OPINION,' shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case."

## II. FATHER'S VISITATION IS SUSPENDED

Between the date of the trial and the filing of the resulting order, Mother filed a petition against Father for contempt, for a restraining order and for an order to show cause. She alleged that during visitation, Father had questioned and intimidated the parties' minor children. She further alleged that Father had ordered the children not to tell Mother or anyone else about his questioning and that he threatened to punish them if they did so.

Mother asserted that Father's behavior frightened the children, and that it was in their best interest that his visitation with them be suspended. She also asserted that Father intentionally violated the court's orders. She accordingly asked the court to find him in both civil and criminal contempt, and to place him in the Wilson County Jail "for as long a period of time as the Court deems fit and proper based on these circumstances." The court entered a show cause order, enjoining Father from taking the children from Mother's custody until the matter could be heard.

On February 17, 2006, the parties entered into an Agreed Order that suspended Father's visitation and his communication with the children "until such time as it is deemed appropriate to resume contact." The parties stipulated that Father's visitation and communication could begin again upon the recommendation of the children's counselor and that the counselor would determine an appropriate visitation schedule for the children.

The trial judge had questioned both children during the divorce hearing and noted that they were having a very difficult time adjusting to their parents' divorce. She accordingly ordered Mother to choose a counselor to help them with the issues they were facing.[2] The judge also declared that she was awarding Father standard visitation, but that "I'm going to leave everything the way it is right now." The court order of March 27, 2006 did not include a permanent parenting plan as mandated by Tenn. Code Ann. § 36-6-404, but granted Mother an absolute divorce from Father, divided the marital property, named Mother as the children's primary custodial parent, and ordered child support based on Father's income.

The court conducted a follow-up hearing on May 19, 2006 to establish a parenting plan for the parties. The plan that was adopted included a standard visitation schedule for Father, with visitation every other weekend. But the final order adopting the plan declared that "said Plan shall be subject to restrictions heretofore imposed by Agreed Order entered in this cause on February 17, 2006."

---

[2]The only part of the transcript of the divorce hearing in the appellate record is the court's ruling after the close of the evidence. That ruling was incorporated by reference into the court's order, and it contains the judge's discussion of her impressions of the two children.

The record contains a series of letters from the children's counselor, some addressed to the trial judge, some to Father, and some to all parties. It is unclear how those letters became a part of the appellate record, for they were not admitted into evidence during any court proceeding, nor were they attached as exhibits to any motions or pleadings. It appears that the counselor wanted to keep the trial court informed. Because these letters are not properly in the record, we will not discuss their contents, except to note they reflect that Father had a few supervised visits facilitated by the counselor. That fact appears in later-filed pleadings.

### III. THE SUSPENSION OF FATHER'S VISITATION IS RENEWED

On September 25, 2006, Mother filed a motion to terminate Father's visitation until he could receive psychological counseling or medication to resolve his issues. She based her motion upon an incident during Father's most recent supervised visitation with the children a few days earlier, when he stormed angrily out of a restaurant with Father's parents and the counselor present. Mother stated that it was not in the children's best interest to expose them to Father's irrational behavior, and she asked the court to hear the feelings of the children directly. There is no indication in the record that the trial court conducted a hearing on Mother's motion.

On April 10, 2007, Mother filed a petition for criminal contempt against Father. She asserted that he was often late in paying child support, and that he had fallen into arrears by not paying support for the months of December 2006, January 2007, and February 2007. After a hearing, the court found that Father was in civil (not criminal) contempt for falling behind in his child support payments. He was sentenced to thirty days in jail, with the sentence to be suspended upon payment. The order also declared that "[a]ll visitation shall remain suspended until further orders of the court."

On March 17, 2009, Father filed a petition for contempt and to modify custody and child support, in which he alleged that Mother had been uncooperative with him. He asked the court to allow him to have visitation with his children. Mother filed a motion to dismiss Father's petition.

Fifteen months later, on June 28, 2010, the court appointed a guardian ad litem to "assist the court in reviewing the children's counseling records and making appropriate recommendations regarding visitation with Father." The guardian filed her report to the court on December 3, 2010. She stated that she had interviewed both parents and the children, monitored the children's educational needs, and followed their progress in counseling. She had also asked Father to undergo a psychological evaluation.

In the report, the guardian ad litem noted that Father had completed his psychological evaluation and that he attended the first individual counseling session that was recommended after that evaluation. She stated, however, that he did not follow-up with additional counseling, as recommended. The children had attended counseling sessions from August until October 2010, when the counseling was put on hold, pending Father's compliance with his recommended counseling sessions.

The guardian ad litem stated that it would not be in the best interest of the children to have visitation with Father. She suggested that there would be a risk of further traumatizing the children if they were forced to participate in family counseling or visitation with Father, but that it would be helpful if there were written communication with Father, to be screened by a third party.

Father's petition of March 17, 2009 came before the court on December 3, 2010, the same day the guardian ad litem's report was filed. The court dismissed the portion of the petition relating to visitation without hearing from any witnesses.[3] In its order of March 29, 2011, the court recited that it had "heard the arguments of Counsel, reviewed the report of the Guardian ad Litem and statements of the Guardian ad Litem, and the record as a whole," and concluded that because the children were 15 and 17 years old, it would not force them to visit Father if they did not desire to do so. Father filed a motion to alter or amend, which was denied. This appeal followed.

## IV. ANALYSIS

Resolving questions of parenting and visitation are among the most important decisions that our courts are called upon to make. *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007); *Chaffin v. Ellis,* 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006) *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). In making such decisions, the needs of the child are paramount, with the desires of the parent being secondary. *Chaffin v. Ellis*, 211 S.W.3d at 286. Trial courts have broad discretion to make decisions regarding parenting arrangements, but those decisions must be based on proof and on applicable principles of law. *Chaffin v. Ellis*, 211 S.W.3d at 286; *D. v. K.*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995).

Pursuant to Tenn. Code Ann. § 36-6-404(a), any final decree in an action for absolute divorce involving a minor child must incorporate a permanent parenting plan. A parenting

---

[3]The trial court did not dismiss the portion of Father's petition regarding modification of child support, but Father subsequently filed a voluntary dismissal of that claim, in order to render the court's order final for purposes of appeal.

plan is defined in Tenn. Code Ann. § 36-6-402(3) as "a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a Residential Schedule." A residential schedule designates the primary residential parent and "is the schedule of when the child is in each parent's physical care." Tenn. Code Ann. § 36-4-402(5).

Allocating residential parenting time or visitation to a non-custodial parent is generally favored in Tennessee, because "[a] child's interests are well-served by a custody and visitation arrangement that promotes the development of relationships with both the custodial and non-custodial parent." *Wilson v. Wilson*, 987 S.W.2d 555, 564 (Tenn. Ct. App. 1998) (quoting *Pizzillo v. Pizzillo,* 884 S.W.2d 749, 755 (Tenn. Ct. App. 1994)). Additionally, "[t]he general assembly recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests." Tenn. Code Ann. § 36-6-401(a).

Tennessee Code Annotated § 36-6-406(a) gives the court the power, however, to limit a parent's residential time with his children if it determines "based upon a prior order or other reliable <u>evidence</u>" that the parent has engaged in certain conduct, including the refusal to perform parental responsibilities, willful abandonment, a conviction of sexual abuse, or "a pattern of emotional abuse of the parent, child or of another person living with that child." (emphasis added).

Tennessee Code Annotated § 36-6-406(d) includes another list of factors that would justify imposing a limitation on parental visitation. These include neglect, emotional or physical impairment that would interfere with the performance of parenting duties, and impairment resulting from drugs, alcohol, or other substance abuse. There is also a catch-all provision: "[s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child." Tennessee Code Annotated § 36-6-406(d)(8). The statute states, however, that the court may only take such action after a hearing at which any of those factors are found to exist. Tenn. Code Ann. § 36-4-406(d).

The language in the trial court's order in this case shows that it dismissed Father's petition for visitation with his children based entirely on the report of the guardian ad litem and the statements of Mother's attorney. There was no evidentiary hearing, no sworn testimony of witnesses, and no cross examination.

Mother cites several cases for the proposition that a trial court may severely limit or restrict visitation if the court finds that the child's emotional health is in danger or the child has been emotionally abused by the parent. See *Suttles v. Suttles,* 748 S.W.2d 427 (Tenn.

1988); *Winkler v. Winkler,* M2010-01821-COA-R3-CV, 2011 WL 5115543 (Tenn. Ct. App. Oct. 25, 2011) (no Tenn. R. App. P. 11 application filed). In both of those cases, however, the trial court imposed limitations on the non-custodial parent's visitation only after an evidentiary hearing. Thus, we do not question a trial court's authority to limit parenting time when there is evidence to support such a decision.

Father also notes that court did not explain its grounds for restricting his visitation, other than its desire not to force the children to visit if they did not wish to do so. This court has had to deal with coerced visitation in the past, and we have recognized that such visitation may indeed be problematic and that it is not always appropriate. *See Jones v. Jones*, 01A01-9607-CV-00346, 1997 WL 80029 (Tenn. Ct. App. Feb. 26, 1997). We have also concluded, however, that in the absence of a specific finding that such visitation would harm the child, an order restricting visitation based solely on the preference of the child would be contrary to public policy.[4] *Helson v. Cyrus,* 989 S.W.2d 704, 708 (Tenn. Ct. App. 1998); *Rudd v. Rudd,* W2009-00251-COA-R3-CV, 2009 WL 4642582 (Tenn. Ct. App. Dec. 9, 2009)(no Tenn. R. App. P. 11 application filed).

Father asserts that he is not guilty of any of the conduct delineated in either Tennessee Code Annotated § 36-6-406(a) or (d). He points out that he has been paying child support since before the 2006 divorce, and that he has not been permitted to see his children since June of 2007. As far as we can tell, he has had only a few supervised visitations since February 2006. It is undisputed that he has been deprived of contact with his children during some of the most critical and important years of their growth and development. He has not been allowed even brief or supervised visitation since June of 2007.

Although Father agreed to a suspension of his visitation in February of 2006, he could hardly have envisioned the duration of his forced lack of contact with his children. In any event, he has now asked the court to order visitation, and he cannot be held to an unenforceable agreement to delegate the court's authority to a third party unrelated to the justice system. Accordingly, the February 2006 Agreed Order cannot be used as a basis to deny Father's petition.

We therefore vacate the court's order and we order it to conduct an evidentiary hearing on Father's motion in an expeditious manner. By doing so, we are in no way suggesting what the outcome of that hearing should be. However, any outcome must be the result of a full and fair hearing.

---

[4]At the time of oral argument on this appeal, his daughter had reached the age of eighteen, and thus was beyond the reach of court-ordered visitation. But his son was still sixteen, leaving only a small window of time for such visitation to occur.

## V.

The order of the trial court is vacated.  We remand this case to the Circuit Court of Wilson County for a prompt hearing on Father's petition.  The costs on appeal are charged to the appellee, Stephanie S. Jernigan.

_____
PATRICIA J. COTTRELL, JUDGE