917 S.W.2d 682 (1995)
D,[1] Plaintiff-Appellant,
v.
K, Defendant-Appellee.
Court of Appeals of Tennessee, Eastern Section.
September 29, 1995.
Rehearing Denied November 1, 1995.
Application for Permission to Appeal Denied February 5, 1996.
*683 Wanda G. Sobieski, of Sobieski, Messer & Associates, Knoxville, for appellant.
Jerri S. Bryant, of Carter, Harrod & Cunningham, Athens, for appellee.
Application for Permission to Appeal Denied by Supreme Court February 5, 1996.

OPINION
SUSANO, Judge.
This is a post-divorce case. Appellant, the mother of the minor children at the center of the instant controversy, sought a modification of the parties' final judgment of absolute divorce in order to restrict her former husband's visitation with their five year old twin sons. In the same pleading, she asked for a finding of contempt and attorney's fees. The appellee filed a counterclaim alleging that the appellant had herself been guilty of contempt when she denied him weekend visitation on one occasion. The trial court denied the appellant's request that the appellee's visitation be supervised; found both parties in contempt of court; and denied the appellant's prayer for attorney's fees. Mother[2] appeals, raising issues that present the following questions for our review:
1. Does the evidence preponderate against the trial court's finding that Mother was in contempt of court?
2. Does the evidence preponderate against the trial court's determination that Father's visitation should not be supervised?
3. Is Mother entitled to an award of attorney's fees and expenses?

I
The parties were divorced on December 22, 1993. The final judgment approved and incorporated the parties' marital dissolution agreement, which agreement placed the custody of the parties' twin sons with Mother subject to Father's specified visitation. As later modified by the parties, Father's visitation time included one out of every three weekends.
The divorce was granted to Mother based upon Father's adultery with a woman infected with the HIV virus. Father later married his paramour.[3] Because of Father's continuing relationship with an HIV positive individual, the parties agreed to, and the court incorporated, a number of restrictions on Father's visitation, including an injunction on Father "[h]aving [his present wife] in the children's presence, or in [her] close proximity." The final judgment also enjoined Father from "permitting the children to sleep in the same bed that [Father had] used in the past." The divorce judgment also incorporated the parties' agreement that Father would have periodic blood tests and would "arrange for the results of the ... tests to be sent directly to [Mother]."
*684 The restrictions placed on Father's visitation, as agreed to by the parties, were the same as those that had been imposed by the Chancellor at a pendente lite hearing following two days of testimony. His memorandum opinion and order entered following that hearing, indicated that the restrictions were, at least in part, prompted by his finding that
[t]he twins were premature and their immune systems were slow developing. As a result, the parties had to be and have continued to be very cautious from a sanitary standpoint in their handling of the boys.
In the same memorandum opinion and order, the Chancellor stated that he was placing some eight restrictions[4] on Father's visitation. The reasons he gave for these "precautions" were
... 1) because of the lack of development of the children's immune systems and 2) because of the defendant's irrational behavior in continuing to place himself at risk.

II
Shortly after the divorce was final, Mother learned that the children were sleeping with Father during the latter's visitation. She hired a private investigator who conducted surveillance of Father and the children at a motel on the weekend of April 22, 1994. Because the final judgment prohibited Father from having the children around his wife, he had elected to exercise his weekend visitation at a motel. The investigator reported to Mother that Father had left the children unsupervised at the motel for over five hours during the weekend of April 22, 1994.
On April 29, 1994, based upon the investigator's report, Mother filed the petition in the instant case. As relevant to this appeal, Mother alleged Father was in contempt of court because he was permitting his sons to sleep with him and because he had failed to have his blood tests sent directly to her. Mother also sought an order directing that Father's visitation be supervised. She also asked for attorney's fees.
While Mother's petition was pending, she refused to let Father exercise his visitation for the weekend of May 20, 1994, unless he would agree to supervised visitation. When he refused, Mother did not permit the scheduled visitation. This prompted Father to file his counterclaim for contempt.
The trial court held a hearing on the parties' competing pleadings. At the conclusion of the hearing, the court filed its memorandum opinion and final order. The court concluded that Father was "technically" in contempt because he let the children sleep in his bed and because he failed to have his blood tests sent directly to Mother. He also found Mother to be guilty of "technically violating" the final judgment for the missed weekend visitation. He did not order any punishment for the "technical violations" of either of the parties; but he did admonish the parties to comply "with the letter and spirit" of the final judgment. Although finding that Father's supervision on the weekend in question "left much to be desired," he refused to require Father to have another supervise his visitation, but did amend the final judgment to require "[Father] to provide proper and adequate supervision of the children at all times during visitation periods." Finally, as pertinent here, he denied Mother's request for attorney's fees.

III
The trial court found that Mother was guilty of a "technical violation" of the final judgment because she refused to allow Father to exercise his visitation during the weekend of May 20, 1994. Mother admitted that she told Father that she would not make the twins available to him that weekend unless he agreed to supervised visitation, a condition not prescribed in the final judgment.
This court addressed the issue of a party's failure to follow a court order in the case of Sherrod v. Wix, 849 S.W.2d 780 (Tenn. App. 1992):
Determining whether its order has been followed is the prerogative of the trial court, (citation omitted) and is uniquely *685 within the trial court's discretion. (citation omitted).
Id. at 786. There is no doubt that Mother had violated the final judgment; she admitted that she had. She argues that her violation was justified  that she only did what any other custodian would have done under the same circumstances. Our response to this is twofold. First, Mother knew, when she attempted to mandate a condition not found in the final judgment, that Chancellor Cate had rejected her request for a temporary restraining order with respect to supervised visitation when he signed a fiat on April 29, 1994, following the filing of Mother's petition. Despite this knowledge, she persisted in her insistence that the visitation on May 20, 1994, be supervised. This she could not do, under the circumstances of this case, without running the risk of a finding of contempt.
Our further response to Mother's argument is that her reasoning is relevant to the issue of punishment, and not the issue of contempt. Cf. Churchwell v. Callens, 36 Tenn. App. 119, 252 S.W.2d 131, 137 (1952). We believe the trial court considered her reasoning because it did not assess any punishment for her refusal to honor Father's visitation rights.
We find that the evidence does not preponderate against the trial court's finding of contempt. See T.R.A.P. 13(d). We find no abuse of discretion in the court's judgment with respect to its finding that Mother was guilty of a technical violation of the final judgment.

IV
The Chancellor refused Mother's request that Father's visitation be supervised by a "Court approved supervisor until further order of [the] Court." Our review of this determination is de novo; but the Chancellor's findings of fact are presumed to be correct unless the evidence preponderates against them. T.R.A.P. 13(d); Hass v. Knighton, 676 S.W.2d 554 (Tenn. 1984). No such presumption attaches to his conclusions of law. Adams v. Dean Roofing Co., 715 S.W.2d 341, 343 (Tenn. App. 1986).
In child custody and visitation cases, we must never lose sight of the fact "that the welfare of the child [is and] has always been the paramount consideration." Luke v. Luke, 651 S.W.2d 219, 221 (Tenn. 1983); Griffin v. Stone, 834 S.W.2d 300, 302 (Tenn. App. 1992). While "[t]he details of child custody and visitation arrangements are generally left to the discretion of the trial court ... this discretion is not unbounded. [It] must be based on proof and upon appropriate legal principles." Hesson v. Garrison, App. No. 87-72-II, 1987 WL 15145 at [*]4 (Tenn. App. 1987). "[T]he interests of the child may require the court to place restrictions on either or both of the parents." Id. (citing as authority the case of Felton v. Felton, 383 Mass. 232, 418 N.E.2d 606, 607 (1981)). Our reported appellate decisions are to the same effect. See, e.g., Suttles v. Suttles, 748 S.W.2d 427 (Tenn. 1988) (restricting visitation rights of father in prison for violent behavior toward his child).
We believe the evidence preponderates against the trial court's determination that it is not necessary for Father's visitation to be supervised. There was credible proof that Father allowed these five year old twins the "run" of commercial premises without adult supervision for over five hours during his "visitation" with them at a motel on the weekend of April 22, 1994. The proof overwhelmingly supports the following facts as recited in the appellant's brief:
... [Father] allowed these two five-year-old boys to roam freely around a motel parking lot (less than one hundred (100) yards from an interstate ramp) for an hour and fifty-nine minutes ... without supervision while cars and tractor-trailer trucks pulled in and out and complete strangers milled about... . [He] permitted the children to run freely (unwatched) and play in the Cracker Barrel parking lot. [He] permitted these small children to play unattended in a motel swimming pool for an hour and thirty-one minutes ..., with no lifeguard on duty and no adult supervision, while he watched TV in his room with the curtains drawn.
The private investigator's video tape in the record before us vividly confirms his testimony *686 that Father failed to exercise even minimal supervision for a period of more than five hours during the weekend visitation; but what is even more disturbing is Father's cavalier attitude[5] toward his lack of supervision of these immunodeficient five year old boys. He testified that his supervision on that weekend was as it had been in the past. His testimony indicated that he saw nothing wrong with his conduct or, more correctly, his lack of conduct in supervising his boys. In this day and age of child abductions and the like and considering the potential problems associated with the children's immunodeficiency, we find Father's conduct and attitude to be totally unacceptable. We do not agree with his position that Mother is being overly protective. Any reasonable person would find Father's conduct to be unreasonable, not to mention dangerous to the health and welfare of his children. As the Chancellor noted, his conduct "left much to be desired." Accordingly, we think it is appropriate to vacate so much of the trial court's memorandum opinion and final order of July 8, 1994, as found "that third-party supervision is [not] necessary or feasible."

V
Finally, on the subject of attorney fees, we find that reasonable attorney's fees and expenses should be awarded to the appellant pursuant to the authority of T.C.A. § 36-5-103(c) which provides, in pertinent part, as follows:
The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred ... in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.
See also Deas v. Deas, 774 S.W.2d 167, 170 (Tenn. 1989) ("There is no absolute right to such fees, but their award in custody ... proceedings is familiar and almost commonplace.") We believe an award of fees and expenses is appropriate because the appellant has successfully pursued a suit regarding a change in visitation  an adjunct of custody  that this court has found is in the best interest of the children. Father's irresponsible conduct in connection with the April 22, 1994, weekend visitation necessitated this suit and he should be responsible for the appellant's fees and expenses. Because we believe T.C.A. § 36-5-103(c) is sufficient authority for an award of fees and expenses in this case, we do not address the appellant's insistence that fees and expenses are also justified under the language[6] of the final judgment and that the expenses are recoverable under Tenn.R.Civ.P. 54.04(2).
Based on the affidavit of the appellant's attorney, we find that $3,282.79 is a reasonable award for attorney's fees and expenses in this case. See T.R.A.P. 36.
The trial court's judgment with respect to the appellant's contempt is affirmed. The trial court's judgment that supervision of Father's visitation is not necessary is vacated and this case is remanded to the trial court for a hearing to determine the manner in which Father's visitation is to be supervised by an adult to be selected by the court. Pending that hearing, Father's visitation will be exercised in the presence of one of Father's *687 parents or such other individual as may be agreeable to the parties. Supervised visitation will continue until the trial court determines, after a hearing, that it is no longer necessary, or the parties, by agreement approved by order of the trial court, determine that continued supervised visitation is unnecessary.
On remand, an order will be entered by the trial court awarding the appellant attorney's fees and expenses of $3,282.79 and taxing costs below to the appellee. Costs of this appeal are also taxed to the appellee.
GODDARD, P.J., and FRANKS, J., concur.

OPINION ON PETITION FOR REHEARING
The appellant has filed a petition for rehearing. She argues that we should have awarded her the fees and expenses of the private investigator whose surveillance prompted this court to order supervised visitation. We agree; however, we are not able to ascertain with certainty the investigator's charges based upon the record now before us. It is not clear whether the investigator's statement of May 9, 1994, is cumulative, or in addition to the charges reflected on his earlier statement of April 18, 1994. Since the first statement is dated before the surveillance on the weekend of April 22, 1994, we suspect the latter conclusion is correct; but since this matter is not free of doubt, we believe it appropriate to remand this case to the court below to determine the reasonable charges of the investigator, including his reasonable expenses. We modify our original opinion to award his reasonable charges, said charges to be determined by the trial court.
The appellant also seeks her attorney's fees and expenses on appeal. She argues that we overlooked her request for same in her brief. We agree. We believe she is entitled to an award of reasonable fees and expenses incurred in connection with the pursuit of her appeal and we modify our original opinion to make such an award; however, we believe a determination of a reasonable fee for the time and expenses of her attorney on the appeal should be determined by the trial court and this cause is remanded for that purpose. Cf. Folk v. Folk, 357 S.W.2d 828 (Tenn. 1962). These fees and expenses are limited to those incurred after the date of the hearing on the appellant's motion to alter or amend. It was and is the intention of this court that its previous award of $3,282.79 is a fair award for all services performed and expenses incurred on and prior to the date on which the trial court considered the motion to alter or amend. To the extent that the affidavit of counsel in the record certified to us does not cover all of the time expended and expenses incurred on and before the hearing date, those omitted charges are disallowed. All such fees and expenses could have been included in the record based on actual time records and known expenses or reasonable estimates of counsel.
IT IS SO ORDERED.
GODDARD, P.J., and FRANKS, J., concur.
NOTES
[1] Because of the sensitive nature of some of the factual material in this case, this court granted the appellant's motion to conceal the identities of the parties. Cf. State v. Doe, 588 S.W.2d 549 (Tenn. 1979).
[2] Because the issues in this case are related to the parties' minor children, the parties will be referred to as "Mother" and "Father."
[3] There is no evidence in the record before us that Father's wife has yet contracted AIDS; nor is there any evidence that Father is infected with AIDS or even HIV positive.
[4] These restrictions included the two referred to earlier in this opinion.
[5] Father's "attitude" toward his children is also reflected in the fact that he has voluntarily decided not to exercise visitation with his children at Christmas or in the summer and has also reduced his weekend visitation from every other weekend as set forth in the final judgment to one out of every three weekends.
[6] Paragraph 51 of the parties' marital dissolution agreement provides:

The parties agree that any costs including, but not limited to, reasonable counsel fees, court costs, investigation fees, and travel expenses incurred by a party in the successful enforcement of any of the agreements, covenants, or provisions of this Agreement, whether through litigation or other action necessary to compel compliance herewith, shall be borne by the defaulting party. Any such reasonable costs incurred by a party in the successful defense to any action for enforcement of any of the agreements, covenants, or provisions of this Agreement shall be borne by the other party.