IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2019 Session

## IN RE A.P.

**Appeal from the Juvenile Court for Davidson County**
**No. 2010-002897     Sheila Calloway, Judge**

_____

**No. M2017-00289-COA-R3-PT**

_____

Mother appeals the trial court's order terminating her parental rights as to her minor child. Because we conclude that the trial court erred in allowing Mother's counsel to withdraw the morning of trial, without considering whether Mother had notice of the withdrawal, we vacate the trial court's order and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

E. Elijah Wilhoite, Nashville, Tennessee, for the appellant, U. E. E.

Thomas H. Miller, Nashville, Tennessee, for the appellees, D. P., and A. O. P.

## OPINION

### Background

The child at issue in the present case is the non-marital child of U.E.E. ("Mother") and A.O.P. ("Father"). Father and his wife, D.P., (collectively with Father, "Appellees") filed a petition to terminate Mother's parental rights in the Juvenile Court for Davidson County ("trial court") on January 29, 2016. At some point, Mother retained attorney William Stover ("Mr. Stover") to represent her in the termination proceedings. Although the trial was originally set for August of 2016, the matter was continued several times due to scheduling issues. The trial court eventually held a hearing on September 13, 2016, during which it set the matter for trial on February 1, 2017 and February 3, 2017. The

trial court's notes from the September 13, 2016 hearing indicate that only Mr. Stover and Appellees' counsel were present in court on that date.

Thereafter, on November 14, 2016, Mr. Stover filed a motion to withdraw as Mother's counsel, stating that Mother had failed to stay in communication with Mr. Stover, and that Mother had otherwise failed to fulfill her contractual obligations. Mother's name and address was not included in the certificate of service attached to the motion to withdraw. The trial court heard Mr. Stover's motion on January 17, 2017, and allowed the withdrawal but appointed Mr. Stover as Mother's attorney.[1] *See generally* Tenn. Sup. Ct. R. 13(d)(2).

The case proceeded to trial on February 3, 2017. However, the morning of trial, Mr. Stover filed a second motion to withdraw as Mother's counsel, this time contending that a conflict had arisen between Mother and him such that Mr. Stover could no longer represent her. The motion further stated that Mother had failed to stay in contact with Mr. Stover and the attorney-client relationship was thereby broken. Again, Mother's name and address was not listed on the certificate of service attached to the motion to withdraw, nor was Mother present in court on February 3, 2017.

The trial court addressed Mr. Stover's motion to withdraw at the start of the hearing, whereupon the following exchange occurred:

> MR. STOVER: . . . . In preparing for the trial, it just became apparent to me, based upon some of the information that I reviewed recently, that I have a conflict, Your Honor. Based on what I need to be able to do in the case and the responsibility, you know, based upon the Rules of Professional Responsibility and things that I would need to do - maybe should do, I feel like I can't do in this situation. And I think that, you know, without going into further detail, I just don't feel like that I should remain on as counsel for [Mother] in this case, based upon that.
>
> &ast; &ast; &ast;
>
> THE COURT: Mr. Stover, when was the last time you had actual contact with [Mother]?
>
> MR. STOVER: I believe it was an e-mail back when I filed the last motion to withdraw.
>
> THE COURT: To withdraw, okay.

---

[1] The trial court's order contains no certificate of service.

MR. STOVER: And she emailed that - requested - I mean, just asked what happened. It was a couple of words, you know, two - one sentence. I replied, and that was it. I want to say it was back in November. I would have to look - try to look back. I want to say that was back in November.

THE COURT: The holiday was - so she responded to you after the -

MR. STOVER: After the hearing day.

THE COURT: - after the hearing day?
[OPPOSING COUNSEL]: If - I would suggest that [Mother] has abandoned her attorney and this case.

THE COURT: It sounds like that. So she was aware - she asked you, after the case, after the motion to withdraw, she was aware that I had denied that and appointed you as her attorney?

MR. STOVER: Right. Yes, . . . ma'am, I put that in my response. I let her know what happened.

THE COURT: And that the trial date was still on go?

MR. STOVER: I did. But just, Your Honor, just to briefly kind of respond to what [opposing counsel] was saying, I mean, I can go further into detail, but the more detail I go into, I think the worse the situation becomes because of the fact that -

THE COURT: I understand. I'm [not] going to make you go into more detail. I'm going to let you withdraw.

Consequently, the trial court allowed Mr. Stover to withdraw and proceeded with the termination hearing with no participation from Mr. Stover. At the close of evidence, the trial court determined that Mother's parental rights as to the child should be terminated, and a final order of termination was later entered on February 28, 2017. Mr. Stover, however, filed a notice of appeal with this Court on behalf of Mother on February 8, 2017. Thereafter, the trial court entered a written order on March 6, 2017, allowing Mr. Stover's withdrawal. In this order, the trial court also stated that Mother had "abandoned and, or forfeited her right to appointed counsel in this case." After Mother filed a pro se motion to this Court, Mother was appointed new counsel for purposes of this appeal.

## Discussion

- 3 -

Although the parties raise various issues related to the trial court's decision to find clear and convincing evidence to terminate Mother's parental rights, we perceive the dispositive issue to be whether the trial court erred in allowing Mother's trial counsel to withdraw the day of the termination hearing. Because the decision "to permit the withdrawal of counsel is within the sound discretion of the trial court[,]" we review this issue for an abuse of discretion. *Banks v. Univ. of Tennessee*, No. M2017-01358-COA-R3-CV, 2018 WL 3621082, at \*7 (Tenn. Ct. App. July 30, 2018). As such, this Court is not permitted to "second-guess the court below," or to "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 525 (Tenn. 2010) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999); *Henry v. Goins*, 104 S.W.3d 475 479 (Tenn. 2003)). "When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness." *Id.* at 525.

Here, Mother argues on appeal that the manner in which Mr. Stover was allowed to withdraw violated her due process right to a fundamentally fair proceeding in the trial court. Specifically, Mother asserts that she was not informed that the trial was set for February 1, 2017 and February 3, 2017, and, further, that she was not informed of Mr. Stover's intent to withdraw as counsel the day of trial. In support, Mother points out that her information was not included in the certificates of service for either of Mr. Stover's motions to withdraw, despite Mr. Stover knowing how to get in touch with Mother. Overall, Mother's contention on appeal is that she "has not been afforded notice reasonably calculated to apprise her not only of Mr. Stover's motion to withdraw[,]" but also of the trial itself. Moreover, Mother asserts that the responsibility to notify her rests with Mr. Stover, and that the trial court's inquiry regarding Mr. Stover's efforts to so notify Mother were inadequate.

On balance, the Appellees argue that the right to appointed counsel in a termination proceeding is not absolute and that Mother waived her right to an attorney by failing to communicate with Mr. Stover. Appellees assert that "[a] parent's due process rights in parental termination cases are not violated when a court finds that the parent has effectively waived his or her right to appointed counsel through the parent's own conduct." As such, Appellees dispute that Mother's fundamental rights were violated when the trial court allowed Mr. Stover to withdraw the day of trial.

Having reviewed the record and the applicable case law, however, we share Mother's concerns about the procedural history of this case. It is well-settled that a "parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 527 (Tenn. 2016), *cert. denied sub. nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, 137 S. Ct. 44

(2016) (citing ***Troxel v. Granville***, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); ***Stanley v. Illinois***, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972)). As such, the rights implicated in parental termination cases are considered "far more precious than any property right[,]" and "[i]n light of the interests and consequences at stake, parents are constitutionally entitled to fundamentally fair procedures in termination proceedings." ***Id.*** at 522 (citing ***Santosky v. Kramer***, 455 U.S. 745, 758–59 (1982)). Although the United States Supreme Court has declined to hold that due process requires the appointment of counsel in each and every parental termination case, ***Lassiter v. Dep't of Social Servs.***, 452 U.S. 18, 31 (1981), "Tennessee statutorily provides the right to appointed counsel for indigent parents in every parental termination proceeding." ***In re Carrington H.***, 483 S.W.3d at 527; *see also* Tennessee Code Annotated section 37-1-126(a)(2)(B)(ii) ("A parent is entitled to representation by legal counsel at all stages of any proceeding under this part in proceedings involving . . . [t]ermination of parental rights pursuant to § 36-1-113."). Consequently, there is no dispute that Mother initially had a statutory right to be represented by counsel in the termination proceedings in the trial court, nor does anyone dispute Mother's right to a fundamentally fair termination proceeding.

While a parent's right to appointed counsel in a termination of parental rights proceeding is well-established in Tennessee, this Court has also acknowledged that where a parent fails to adequately cooperate or communicate with their counsel before trial, the client may have impliedly waived the "right to appointed counsel by his or her conduct."[2] ***In re Jamie B.***, No. M2016-01589-COA-R3-PT, 2017 WL 2829855, at *4 (Tenn. Ct. App. June 30, 2017); *see also* ***State Dep't of Children's Servs. v. Agbigor***, No. M2000-03214-COA-R3-JV, 2002 WL 31528509, at *5–6 (Tenn. Ct. App. Nov. 15, 2002) (holding that the right to counsel was waived where father left the country before trial, failed to contact and otherwise cooperate with his attorney, and returned only shortly before the termination hearing); ***In re M.E.***, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at *12 (Tenn. Ct. App. Aug. 16, 2004) ("Failure to cooperate with appointed counsel can constitute a waiver of the right to appointed counsel."). Here, the trial court relieved Mr. Stover of his appointment and proceeded with the trial without appointing alternative counsel for Mother concluding that Mother had abandoned and/or forfeited her right to counsel. Therefore, we must determine whether the record is sufficient to show that Mother effectively waived her right to counsel through her actions, and the

---

[2] We note that a far stricter standard has been adopted by the Tennessee Supreme Court with regard to the forfeiture of constitutionally mandated appointed counsel in criminal actions. *See* ***State v. Holmes***, 302 S.W.3d 831, 838 (Tenn. 2010) ("A criminal defendant may be deemed to have forfeited this right when he or she engages in "extremely serious misconduct," or engages in an "egregious manipulation" of the right to counsel "so as to delay, disrupt, or prevent the orderly administration of justice." (quoting ***State v. Carruthers***, 35 S.W.3d 516, 548 (Tenn. 2000) (internal citation omitted)). This standard has never been applied by Tennessee courts in the context of a civil matter involving termination of parental rights, where the right to counsel is provided by statute rather than constitutional mandate. As such, no party suggests that the standard outlined in ***Holmes*** is applicable here.

concomitant issue of whether the proper procedure was followed in allowing the withdrawal.[3]

In evaluating both Mr. Stover's request to withdraw and whether Mother effectively waived her right to counsel, both this Court and the trial court must "consider the principles embodied in the [Tennessee] Rules of Professional Conduct . . . ." *In re Jamie B.*, 2017 WL 2829855, at *6 (citing *Zagorski v. State*, 983 S.W.2d 654, 660 (Tenn. 1998)); *see also Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004) (citing *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995)) (holding that a trial court's "discretion is not unbounded, it must be based on proof and appropriate legal principles"). The Rules of Professional Conduct provide that a lawyer may withdraw from representation in a number of circumstances. *See* Tenn. Sup. Ct. R. 8, Rule 1.16(b). *But see* Tenn. Sup. Ct. R. 8, Rule 1.16(a) (outlining those circumstances where withdrawal is mandatory). Relevant to this appeal, a lawyer may withdraw when "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled[.]" *Id.* at Rule 1.16(b)(5). Another instance where withdrawal may

---

[3] We would also point out that at the final hearing, Mr. Stover stated that a "conflict" had arisen between he and Mother and that this alleged conflict required Mr. Stover to withdraw as Mother's counsel. However, as we perceive it, the only potential conflict apparent from the record would have been Mother's alleged lack of participation and failure to communicate with Mr. Stover. Neither party has argued on appeal that a separate, distinct conflict required Mr. Stover to withdraw as counsel to Mother; indeed, Appellees focus their briefing on this issue on their contention that Mother has waived her right to counsel through her lack of communication; no other purported conflict is mentioned or argued. Moreover, the trial court, in its order allowing Mr. Stover to withdraw, noted the following:

> 3. The Motion to withdraw presently before the court is based upon a conflict of interest that appears to the court to be incapable of reconciliation.
>
> 4. The Court recognizes that [Mother] has failed to adhere to the standard of conduct reasonably expected from a client by their attorney, based in part upon her failure to participate in the defense of this case. [Mother] has failed to communicate with her attorney, and failed to appear at the trial of this matter.
>
> 5. As a result the court finds that [Mother] has abandoned and, or forfeited her right to appointed counsel in this case.

Accordingly, it appears that the trial court based its decision to allow Mr. Stover's withdrawal solely on the allegation that Mother failed to substantially fulfill her obligations to Mr. Stover by failing to communicate or participate in her defense, *see* Tenn. Sup. Ct. R. 8, Rule 1.16(b) (discussed in detail *infra*), rather than some alternative conflict that required mandatory withdrawal. *See id.* at Rule 1.16(a)(1) (mandating withdrawal of counsel if another Rule of Professional Conduct is violated by the representation); *see also, e.g.,* Tenn. Sup. Ct. R. 8, Rule 1.8 (governing conflicts with current clients); Tenn. Sup. Ct. R. 8, Rule 1.9 (governing conflicts involving former clients and providing guidance of when lawyers cannot represent clients due to these conflicts of interest); Tenn. Sup. Ct. R. 8, Rule 1.9 (governing imputation of conflicts).

be appropriate occurs when "the representation . . . has been rendered unreasonably difficult by the client." *Id.* at Rule 1.16(b)(6). Rule 1.16 provides, however, that a lawyer "shall, to the extent reasonably practicable, take steps to protect the client's interests" upon the lawyer's withdrawal. Tenn. Sup. Ct. R. 8, Rule 1.16(d). "Depending on the circumstances, protecting the client's interests may include . . . giving reasonable notice to the client[.]" *Id.* Moreover, even where a client has effectively waived the right to counsel, this Court recently held that "[a]n attorney appointed by the juvenile court for an indigent party in a parental termination case must seek leave of the court to withdraw" as counsel. *In re Jamie B.*, 2017 WL 2829885, at *5 (citing Tenn. Sup. Ct. R. 13, Sec. 1(e)(5)).

We have previously addressed the issue of a parent's waiver of the right to counsel in conjunction with the withdrawal of appointed counsel under circumstances similar to those at hand. For example, in *In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *5 (Tenn. Ct. App. Dec. 29, 2010), the father was served with a termination petition but failed to appear at the bench trial. At the outset of the trial, the father did not appear and his attorney informed the court that she had not had contact with the father in two months; as such, the attorney made an oral motion to withdraw. *Id.* at *4. The trial court allowed the withdrawal, and proceeded with the bench trial after which father's parental rights were terminated. *Id.*

On appeal, father argued that his due process rights were violated in that he was not given appropriate notice of the bench trial, nor was he represented at the hearing. *Id.* at *5. This Court, however, concluded that father's arguments were without merit. First, we noted the father's concession that he knew about the hearing date in advance, as father had appeared at a prior hearing during which the trial was reset. *Id.* at *6. As such, the argument that he did not have notice of the hearing itself was unavailing. *Id.* Moreover, we concluded that under these circumstances, father's actions amounted to a waiver of the right to counsel. *Id.* Indeed, we pointed out that on appeal, father completely failed to "address his failure to contact or communicate with his counsel or offer any real reason for his absence at the [bench trial.]" *Id.* Considering the fact that the father admitted knowing about the upcoming trial and nonetheless failed to communicate with his attorney in the months before, we determined that his right to counsel was waived. *Id.*

This Court more recently confronted the issue of waiver of a parent's right to counsel in *In re Jamie B.*, 2017 WL 2829855, at *1–2, but reached the opposite conclusion of the *In re Elijah B.* panel. In that case, the mother was late for the termination proceeding and her attorney made a rather equivocating oral motion to withdraw as counsel, noting that he had not been in contact with her for several months. *Id.* at *2. The court granted the motion without questioning the attorney further regarding his efforts to communicate with the mother. *Id.* Shortly after the hearing began, the mother arrived and indicated that she did not wish to relinquish her parental rights and wanted representation. *Id.* After a short conference with the mother, the attorney stated

that he still wished to withdraw and that he was not prepared to go forward that day. *Id.* at \*3. The trial court proceeded with the hearing, and the mother's parental rights were terminated. *Id.* On appeal, mother argued in part that the trial court erred in allowing the attorney to withdraw at the beginning of trial, leaving mother pro se. *Id.* at \*4.

This Court agreed with the mother, concluding that there was insufficient information in the record to support a finding that mother had waived her rights by failing to fulfill her obligations to her counsel. *Id.* at \*6. Indeed, we noted that the attorney provided essentially no information as to his efforts to communicate with the mother, nor did he "indicate whether he provided [m]other any prior warning that he might withdraw." *Id.* Of particular importance in *In re Jamie B.* was the fact that the record contained essentially no evidence as to "counsel's efforts to communicate with his client[;]" likewise, we noted that the trial court's questioning in this regard was limited at best. *Id.* Accordingly, we concluded that the mother's counsel failed to establish how "his apparent past difficulties in communication with [the mother]" amounted to a waiver on her part, or that counsel "had provided suitable notice that he would withdraw if [the mother] failed to satisfy those obligations." *Id.* The trial court's order was vacated and the case was remanded for a new trial. *Id.*

Returning to the present case, we acknowledge that "a failure to communicate and the failure to appear for trial can render a representation unreasonably difficult." *In re Jamie B.*, 2017 WL 2829855, at \*6 (citing *Agbigor*, 2002 WL 31528509, at \*5–6). Such difficulty can serve as a basis for withdrawal of representation under Rule 1.16. See Tenn. Sup. Ct. R. 8, Rule 1.16(b)(5) & (6). Here, however, we perceive the facts at hand to be analogous to *In re Jamie B.* and distinguishable from *In re Elijah B.* Chief among our concerns is the lack of evidence in the record showing that Mother had proper notice of the proceedings. Importantly, in *In re Elijah B.*, there was no dispute that the father was well aware of the hearing date but simply chose not to appear; the father's decision not to participate therefore weighed in favor of a finding that the father "effectively waived his right to counsel" through his actions. 2010 WL 5549229, at \*5–\*6. In this case, however, Mother sharply disputes that she was informed of the hearing date,[4] and the record contains nothing more than Mr. Stover's assertions of notice to show that she was actually informed. These statements are particularly unavailing in that Mr. Stover could not definitively state when he last attempted to contact Mother, but that he believed it was sometime in November of 2016.[5] Moreover, the record tends to suggest that

_____

[4] In contrast, in *In re Elijah B.*, the father in no way disputed the attorney's statements concerning his failure to communicate. *See* 2010 WL 5549229, at \*6 ("Neither, however, does Father, in his brief, address his failure to contact or communicate with his counsel or offer any real reason for his absence at the [] hearing."). Here, Mother asserts that her failure to appear and otherwise communicate is attributable to the fact that she was not receiving documents from Mr. Stover. The fact that Mr. Stover filed his motions to withdraw without including Mother on the certificate of service, discussed *infra*, somewhat supports Mother's allegations.

[5] To reiterate, Mr. Stover stated the following: "I would have to look – try to look back. I want to

- 8 -

Mother may not have been apprised of all of the proceedings. For example, there is nothing in the record indicating that Mother was present at the September 2016 hearing in which the trial court reset the date of the termination hearing to February 1 and February 3, 2017. Likewise, the order appointing Mr. Stover as counsel due to Mother's indigency contains no certificate of service whatsoever. Accordingly, it is not clear that Mother knew the date that this matter was set for trial or was otherwise apprised of the proceedings. In the absence of proof that Mother was aware of the trial date, we are reluctant to conclude that her failure to appear coupled with Mr. Stover's unsupported allegations of lack of communication are sufficient to show that she effectively waived her statutory right to appointed counsel.[6]

Like the *In re Jamie B.* panel, we are further concerned that the record is devoid of anything that would indicate "whether [Mr. Stover] provided Mother any prior warning" that he planned to withdraw as counsel the morning of trial. *In re Jamie B.*, 2017 WL 2829855, at \*6. Indeed, the certificate of service attached to the second motion to withdraw, filed the morning of trial, was addressed to opposing counsel and the guardian ad litem, but not Mother.[7] This is also true of the first motion to withdraw filed by Mr. Stover in November of 2016.[8] While the trial court briefly questioned Mr. Stover about the last time he had contact with his client, at no point did the trial court attempt to discern whether Mother was aware of Mr. Stover's intent to withdraw from his representation. As such, the trial court's inquiry into Mr. Stover's actions can only be described as "limited" at best. *Id.* There is simply no evidence in the record, other than Mr. Stover's unsworn statements that he had not had contact with Mother since November of 2016, that Mother's actions amounted to an effective waiver of her right to be represented by appointed counsel. *See In re Jamie B.*, 2017 WL 2829855, at \*6 ("As for a failure to fulfill an obligation to counsel, we find the facts in the record insufficient to support such a finding. The information provided by counsel regarding his efforts to communicate with his client was limited as was the court's questioning.").

---

say that it was back in November."

[6] As discussed *supra*, Mr. Stover also alleged that a conflict had arisen between he and Mother, although the conflict appears to have been Mother's failure to communicate with Mr. Stover. However, even to the extent that a different conflict requiring a mandatory withdrawal, see Tenn. Sup. Ct. R 8, Rule 1.16(a), had arisen, in the absence of proof that Mother effectively waived her right to counsel, the proper course of action would have been to continue the trial and appoint Mother new counsel. In any event, under these circumstances, Mr. Stover's allegation of a conflict is inapposite as to the issue of whether Mother should have received notice of Mr. Stover's intent to withdraw as counsel.

[7] Mother asserts on appeal that Mr. Stover knew of a P.O. Box at which Mother was to receive mail but that he inexplicably refused to send mail to this address.

[8] Unlike in *In re Elijah B.*, in which the request to withdraw appears to have been made orally when Father failed to appear, see 2010 WL 5549229, at \*4, it appears in this case that Mr. Stover was aware of his intent to withdraw prior to the hearing date and simply chose not to make an attempt to inform Mother of that intent.

In this case, an attempt to provide Mother notice of Mr. Stover's intent to withdraw may very well have proved fruitless. Nevertheless, we cannot ignore that the record does not show that Mr. Stover made any attempt to give Mother notice and causes this court doubt as to whether Mother had notice of the trial date. Consequently, the actions of Mr. Stover and the trial court appear to conflict with the spirit of our professional rules regarding withdrawal. *See* Rules of Prof'l Conduct R. 1.16(d) ("Depending on the circumstances, protecting the client's interests may include . . . giving reasonable notice to the client"); *see also* Rules of Prof'l Conduct R. 1.16 cmt. 8 ("A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation. The lawyer must, however, give the client reasonable notice of the lawyer's intention to withdraw."). Although it is apparent to us that notice to a client before withdrawal from representation is the clear best practice under these circumstances, this went unacknowledged in this case.

Under these particular circumstances, we cannot conclude that the record on appeal supports the assertion that Mother has waived her right to appointed counsel. The "information provided by [Mr. Stover] regarding his efforts to communicate with his client was limited[,]" and the trial court's inquiry into these efforts was perfunctory at best. *In re Jamie B.*, 2017 WL 2829855, at *6. Moreover, the Appellees have provided us with nothing that "indicates whether [Mr. Stover] provided Mother any prior warning that he might withdraw." *Id.* Considering the limited information contained in the record, we simply cannot say that there is a sufficient basis for us to conclude that Mother's alleged shortcomings amount to a waiver of her right to counsel. *See Id.* ("To the extent that counsel was relying upon his apparent past difficulties in communicating with Mother, counsel failed to establish Mother's obligations in that regard or that he had provided suitable notice that he would withdraw if Mother failed to satisfy those obligations."). Where a trial court relieved a parent's appointed counsel on the day of trial without a proper showing that Mother had notice and effectively waived her right to counsel, we have previously concluded that the parent was deprived of fundamentally fair procedures such that a new trial was warranted. *Id.* at *7 (holding that it was inappropriate to terminate the mother's parental rights in this situation where the petitioner's evidence was "largely unchallenged by [the] [m]other and which was offered at a hearing during which [the] [m]other did not have the benefit of counsel"). As we explained, "[u]ltimate rights should be decided only when the court is 'in possession of the materials necessary to enable it to do full and complete justice between the parties.'" *Id.* (quoting *Interstate Transit, Inc. v. City of Detroit*, 46 F.2d 42, 43 (6th Cir. 1931)) (some internal quotation marks omitted).

In light of the significant constitutional implications at issue in the present case, and the deficiency of the information in the record as to how those rights were protected by the trial court, we conclude that the order terminating Mother's parental rights should be vacated and the case remanded for a new trial. Consequently, all other issues raised in

this appeal are pretermitted. *See **O'dneal v. Baptist Mem'l Hosp.-Tipton***, 556 S.W.3d 759, 774 (Tenn. Ct. App. 2018) ("[W]hen presented with multiple issues on appeal, one of which is dispositive, we have consistently found the remaining issues to be pretermitted."). On remand, Mother shall be entitled to appointed counsel unless and until a proper motion for withdrawal of her current counsel is filed and granted.

### Conclusion

The order of the Davidson County Juvenile Court is hereby vacated and the case remanded for proceedings consistent with this Opinion. Costs of this appeal are assessed against the Appellees, A.O.P. and D.P., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE