IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 2, 2020

**AMANDA GALE GATES v. SCOTT GATES**

**Appeal from the Chancery Court for Hickman County**
**No. 17-CV-6022       Michael W. Binkley, Chancellor**

_____

**No. M2019-00894-COA-R3-CV**

_____

In this divorce action, the issue is whether the trial court correctly credited the number of parenting days awarded to each parent for purposes of calculating child support under the terms of the permanent parenting plan (PPP). Scott Gates (father) argues on appeal that the trial court miscalculated his residential time by undercounting the number of days awarded him in the PPP. We hold that there are irreconcilable inconsistencies in the PPP that require us to vacate the trial court's order and remand for clarification of the actual number of days awarded and recalculation of child support.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Melanie Totty Cagle, Centerville, Tennessee, for the appellant, Scott Gates.

No brief filed by the appellee, Amanda Gale Gates.

**OPINION**

**I.**

Father and Amanda Gale Gates (mother) were married on August 23, 2014. Two sons were born to the marriage. On December 17, 2017, the trial court declared the parties divorced on stipulated grounds. The issues of establishing a PPP and child support were reserved. On June 21, 2018, a trial took place on the remaining contested issues. The trial court's final judgment identified these issues as follows:

1

The parties have already been declared divorce[d] . . . and all issues regarding the division of mar[ital] assets and debts have been addressed. Thus, all that was reserved for this hearing is the determination of a Permanent Parenting Plan. Both parties were present and submitted a Proposed Parenting Plan. Counsel were present and during opening statements, the parties concurred that there were three contested issues: 1) the Father's parenting time as the Father stipulated the Mother should be designated as the primary residential parent, 2) the allocation of decision making, and 3) the tax deduction. The parties were able to resolve the Holiday Schedule and Other School Free Days, Fall Break, Winter (Christmas) Vacation, Spring Vacation, Summer Vacation, Transportation Arrangements and the income of the parties.

At the time of trial, the parties' elder son was five years old and the younger was three.

The trial court designated mother to be the primary residential parent. The PPP ordered by the trial court recites that mother will spend 223 days residential time with the children, and father 142 days. In accordance with the parties' agreement, the holiday times were evenly divided between the parties. Father and mother were each awarded one summer vacation week of seven consecutive days; mother received every spring break for a seven-day period, and father every fall break for seven days. The PPP further provides that mother has responsibility for the children except for "Thursday at 4:15 p.m. to Monday take to school or daycare or return to mother as appropriate" every week. Mother was granted one weekend per month "if she is off work," provided that she gives father "30 days notice of the weekend she desires." Father timely filed a notice of appeal. Mother did not file an appellate brief.

## II.

Father raises the issue of whether the trial court erred in calculating the number of his days of residential time with the children.

## III.

Our standard of review is as recently stated by this Court as follows:

Decisions involving the custody of a child are among the most important decisions faced by the courts. ***Steen v. Steen***,

2

61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). Indeed, "by statute as well as case law, the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." *Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007) (quoting *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004)). As such, "trial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Reeder*, 375 S.W.3d at 278 (citing *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999)); *see also* *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)) ("Determining the details of parenting plans is peculiarly within the broad discretion of the trial judge.").

While trial courts are afforded broad discretion in this area, "they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996) (citing *D. v. K.*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995)). Thus, a trial court's decision regarding custody will be set aside only if it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *2 (Tenn. Ct. App., filed Aug. 29, 2019) (quoting *Grissom v. Grissom*, No. W2018-01570-COA-R3-CV, 2019 WL 2158343, at *2 (Tenn. Ct. App., filed May 17, 2019)). In the present case, there are no facts in dispute.

## IV.

The record before us does not contain any information regarding the trial court's method of calculating parenting time. It is unclear how the court arrived at the totals of 223 days for mother and 142 days for father. The PPP grants father the period of time

each week from Thursday at 4:15 p.m. until Monday morning "take to school or daycare or return to mother as appropriate." Mother is granted "one weekend per month," but nothing in the record clearly defines exactly how much time comprises mother's weekend, or the starting and ending times of her parenting time during those periods. Under the "child support" section of the PPP, there is the following statement: "If this is a deviation from the Child Support Guidelines, explain why: The Mother was awarded a 24 day credit per year for her weekend visitation." However, the attached child support worksheet showing the calculations of the Tennessee child support calculator show that there was no variance from the presumptive child support order as calculated by, among other things, the stipulated monthly income of the parties: $3,887 for mother and $2,674 for father.

Father argues that the trial court credited him three days per each of his parenting time periods. If this is correct, it would get the calculation close to the numbers in the PPP: 52 weeks x 3 days = 156 days, less mother's offset of 24 days = 132 total days for father. The source of the ten-day discrepancy from the 142 days recited in the PPP is not readily apparent; it may be from crediting certain additional vacation days. Father argues that the trial court should have credited him for four days per parenting time period, resulting in the following calculation: 52 weeks x 4 days = 208 days, less 24 for mother's weekend offset = 184 days for father + 10 additional vacation days = 194 total days for father. In support of this argument, father relies on the Child Support Guidelines' definition of a "day" of parenting time as

> when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-02-04-.02(10). This Court has utilized the above definition to calculate time as suggested by father in a number of cases. In *Eaves v. Eaves*, No. E2006-02185-COA-R3-CV, 2007 WL 4224715, at *7 (Tenn. Ct. App., filed Nov. 30, 2007), we stated:

> Under the rule, a stretch of time starting Friday at 3:30 p.m. and ending sometime Monday morning (let us say at 8:30 a.m.) counts as three days, since that stretch includes three 24-hour periods during which the children spend more than half of the period with Husband. For instance, the children

4

are with Husband for 20.5 out of 24 hours between noon Friday and noon Saturday; for all 24 hours from noon Saturday until noon Sunday; and for another 20.5 out of 24 hours from noon Sunday until noon Monday. This method of counting is clearly allowable according to the plain meaning of Rule 1240-2-4-.02(10), which states explicitly that "[t]he twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day."

This Court applied the method of calculation recognized in **Eaves** in **State ex rel. Flemming v. Elder**, No. E2008-02487-COA-R3-JV, 2009 WL 1676010, at *3 (Tenn. Ct. App., filed June 16, 2009); **Morgan v. Morgan**, No. E2011-00164-COA-R3-CV, 2012 WL 1939792, at *11 (Tenn. Ct. App., filed May 30, 2012); **Stogner v. Stogner**, No. M2011-00503-COA-R3-CV, 2012 WL 1965598, at *4 (Tenn. Ct. App., filed May 31, 2012); **Carroll v. Corcoran**, No. M2012-01101-COA-R3-CV, 2013 WL 2382292, at *4-5 (Tenn. Ct. App., filed May 29, 2013); **Hooper v. Hooper**, No. M2013-01019-COA-R3-CV, 2014 WL 1682900, at *2 (Tenn. Ct. App., filed Apr. 25, 2014); **Sansom v. Sansom**, No. M2016-01111-COA-R3-CV, 2017 WL 1948690, at *9-10 (Tenn. Ct. App., filed May 10, 2017); **Scot v. Scot**, No. M2018-00562-COA-R3-CV, 2019 WL 2323826, at *7 (Tenn. Ct. App., filed May 31, 2019).

Applying this calculation method to father's parenting time, we arrive at the following number:

Thursday 4:15 p.m. until Friday 4:15 p.m. = one day
Friday 4:15 p.m. until Saturday 4:15 p.m. = one day
Saturday 4:15 p.m. until Sunday 4:15 p.m. = one day
Sunday 4:15 p.m. until Monday 8:00 a.m. = 15.75 hours (more than 12 consecutive hours in a 24-hour period = one day)

52 weeks x 4 days = 208 days, less 24 days for mother's weekend offset = 184 days for father. 365 days less 184 = 181 days for mother.

This potential 181/184 day split is quite different from the 223/142 day split ordered by the trial court.

Moreover, as already noted, neither the precise duration nor the starting and ending times of mother's "weekend" parenting time is determined. The trial court's reference to a 24-day offset implies that mother was only granted two days per weekend

each month. If that is correct, the parenting schedule would call for four changes of custody in a five-day period: mother to father 4:15 p.m. Thursday; father to mother at an unspecified time Friday; mother to father at an unspecified time Sunday; and father to mother around 8:00 a.m. Monday. As a practical matter, so many changes in such a short time appears likely to be cumbersome and unworkable for everyone involved. Furthermore, the ending time of mother's weekend potentially makes a difference in the calculation of father's parenting time. A return time to father on Sunday evening later than 8:00 p.m. results in him not getting credit for Sunday evening to Monday morning, because it would be less than twelve consecutive hours.

In cases where there is a discrepancy between the number of days awarded each parent in the PPP and the actual number of days revealed by the more specific day-to-day schedule, this Court has vacated the trial court's order and remanded for a recalculation. *See, e.g., Scot*, 2019 WL 2323826, at *7; ***Ghorley v. Ghorley***, No. E2015-02051-COA-R3-CV, 2016 WL 6651569, at *6 (Tenn. Ct. App., filed Nov. 10, 2016) ("Because we cannot reconcile the internal inconsistency in the PPP between the written two-week rotation schedule and the total number of annual days awarded to each parent, we have no choice but to vacate that order and remand this issue to the trial court for entry of an appropriate and internally consistent PPP"); ***Hooper***, 2014 WL 1682900, at *2.

In the present case, there is a more significant and fundamental discrepancy than in the above-cited cases. Here, father is arguing that he should be awarded more parenting days than mother. As already noted, it cannot be definitively determined from the trial court's order and PPP whether he is correct. If so, then father must be designated the primary residential parent, as stated by the Supreme Court in ***Hopkins v. Hopkins***, 152 S.W.3d 447, 449, 450 (Tenn. 2004) as follows:

> a primary residential parent is defined as "the parent with whom the child resides *more than fifty percent (50%) of the time*." Tenn. Code Ann. § 36–6–402(4) (2001) (emphasis added).
>
> *     *     *
>
> As we stated in ***Gray*** [***v. Gray***, 78 S.W.3d 881, 884 (Tenn. 2002)], "the Child Support Guidelines contemplate that child support may be awarded only to the primary residential parent."

In this case, however, the parties stipulated, and the trial court ordered, that *mother* be designated the primary residential parent. Father's own proposed parenting plan filed

with the trial court does not give him a majority of parenting days; it proposed a split of 190 days to mother and 175 days to father. Changing the primary residential parent designation to father would result in no child support to mother, notwithstanding the trial court's stated order of child support from father to mother in the amount of $241 per month. Such a change would also have other potentially serious ramifications. *See* *Hopkins*, 152 S.W.3d at 450 n.3 ("The designation of a primary residential parent is also important for purposes other than the determination of child support."). Consequently, we must vacate the trial court's order and remand for a recalculation of parenting time and child support. On remand, the trial court is at liberty to reevaluate and rework the parenting schedule if the court finds it appropriate to do so.

## V.

The judgment of the trial court is vacated and the case remanded to the trial court for such further action as is necessary, consistent with this opinion. Costs on appeal are assessed to the appellant, Scott Gates.

_____
CHARLES D. SUSANO, JR., JUDGE