IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 17, 2019

## TAKESHA CURTISS NELVIS v. LAFAYETTE BAPTIST, JR.

**Appeal from the Juvenile Court for Shelby County**
**No. AA9057      Harold W. Horne, Special Judge**

_____

**No. W2018-01763-COA-R3-JV**

_____

Father appeals the juvenile court's decision to deny him equal parenting time. Because the trial court's order does not contain sufficient findings of fact and conclusions of law as to the statutory best interest factors contained in Tennessee Code Annotated section 36-6-106(a), we vacate the judgment of the trial court and remand for the entry of a proper order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER, and CARMA DENNIS MCGEE, JJ., joined.

Princess Woodard, Memphis, Tennessee, for the appellant, LaFayette Baptist, Jr.

### OPINION

#### I.      FACTS AND PROCEDURAL HISTORY

On October 21, 2014, the State of Tennessee, along with Petitioner Takesha Curtiss Nelvis ("Mother"), filed an action to recover child support against Defendant/Appellant LaFayette Baptist, Jr. ("Father"). The petition alleged that Father owed back child support for the parties' nonmarital child, born in March 2012. Eventually, on June 16, 2015, a juvenile court magistrate entered an order requiring Father to pay ongoing support for the child, retroactive support, and a portion of the child's medical expenses. The order stated that it was a final order but did not include any direction as to parenting time with the child.

Eventually, on April 30, 2018, Father filed a petition in juvenile court for joint custody and visitation of the child. Father sought alternating week parenting time. The trial court ordered a temporary visitation schedule after a hearing in June 2018.[1]

A final hearing was held in August 2018 before a special judge.[2] According to a statement of the evidence filed by Father, Father presented evidence of Mother's unsatisfactory living conditions, while Mother was unable to provide a rationale for limiting Father's parenting time with the child.[3] Father also testified that his work schedule, relationship with the child, and home environment supported equal time with the child. According to the statement of the evidence, at the conclusion of the hearing, the trial court declined to provide an oral ruling as to the best interest factors supporting its decision.

On September 4, 2018, the trial court entered a written order granting Father parenting time on the first, third, and fifth weekends of the month, as well as some holiday visitation. The order lists all fifteen factors under consideration in Tennessee Code Annotated section 36-6-106(a) and provides a place for the trial court to check whether each factor favors one parent or the other, in the following manner:

☐ both equally; ☑ mother over father; ☐ father over mother; ☐ That the parties failed to present proof regarding this, or these, factors.

Likewise, the trial court's final best interest finding is made in a similar manner:

16. That from the proof the Court finds that it appears to be in the best interest of said child to be placed in the ☐ custody of the father ☐ custody of the mother ☑ joint custody of the mother and father, with the ☐ father ☑ mother being the primary residential parent.

_____

[1] The record contains an order confirming the temporary parenting schedule that was signed on November 29, 2018, but filed on January 11, 2019. According to the trial court's final order, Father's counsel was the source of this delay.

[2] Once again, no order appears in the record to show that the magistrate was appointed special judge by the juvenile judge. Rather, the final order in this cause states that such an order "has been filed as a separate order and is incorporated herein by reference and has been filed in this cause." This order is not included in our record. Although we continue to have serious misgivings about this practice, it has not been raised as an issue in this appeal.

[3] The statement of the evidence does not take the form generally approved by Rule 24 of the Tennessee Rules of Appellate Procedure, as it contains significant argument. However, Mother did not object to the statement of evidence and the trial court took no action following its filing. *See* Tenn. R. App. P. 24(f) (stating that when the trial court does not act "as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee . . . the transcript or statement of the evidence . . . shall be deemed to have been approved except in cases where such approval did not occur by reason of the death or inability to act of the judge")

From this order, Father appeals.

## II.    ISSUES PRESENTED

Father raises three issues, which are taken, and slightly restated, from his brief:

1.    Did the trial court properly apply Tennessee Code Annotated section 36-6-106 to its ruling.
2.    Did the trial court err in its creation of the parties' parenting schedule.
3.    Does the trial court's ruling support the public policy of Tennessee.

Mother has chosen not to participate in this appeal and did not file a brief to this Court.

## III.    DISCUSSION

Decisions involving the custody of a child are among the most important decisions faced by the courts. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). Indeed, "[b]y statute as well as case law, the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." *Burden v. Burden,* 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007) (quoting *Cummings v. Cummings,* No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004)). As such, "[t]rial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Reeder*, 375 S.W.3d at 278 (citing *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999)); *see also C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)) ("[D]etermining the details of parenting plans is peculiarly within the broad discretion of the trial judge.").

While trial courts are afforded broad discretion in this area, "they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996) (citing *D. v. K.*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995)). Thus, a trial court's decision regarding custody will be set aside if it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

Here, Father raises several issues with the trial court's ruling, both procedural and substantive. We conclude, however, that Father's concerns regarding the trial court's written order are dispositive of this appeal. Tennessee Code Annotated section 36-6-106(a) provides that "in any. . . proceeding requiring the court to make a custody

determination regarding a minor child, the determination shall be made on the basis of the best interest of the child." To determine a child's best interest, section 36-6-106(a) provides that the trial court "*shall* consider all relevant factors, [listed in the statute] where applicable[.]" *Id.* (emphasis added). These factors include:

> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
> (3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;
> (4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
> (5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
> (6) The love, affection, and emotional ties existing between each parent and the child;
> (7) The emotional needs and developmental level of the child;
> (8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;
> (9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement

with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Although the trial court is not required to "list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," consideration of these factors to determine best interest is mandatory. ***Murray v. Murray***, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010); *see also* ***Broderick D. v. Murray***, No. M2018-00146-COA-R3-CV, 2019 WL 4702622, at *2 (Tenn. Ct. App. Sept. 25, 2019); ***Grissom v. Grissom***, --- S.W.3d ---, 2019 WL 2158343, at *4 (Tenn. Ct. App. May 17, 2019).

Concomitant with the duties imposed by section 36-1-106, Rule 52.01 of the Tennessee Rules of Civil Procedure requires that trial courts make findings of fact in bench trials. Specifically, Rule 52.01 states as follows:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

An order meets the requirements of Rule 52.01 only when the order "'disclose[s] to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" ***Lovlace v. Copley***, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C Federal Practice and Procedure § 2579, at 328). Although this matter was tried in juvenile court, the Tennessee Rules of Civil Procedure are applicable in child custody proceedings under section 36-6-106 even if tried in juvenile court. Tenn. R. Juv. Prac. & Proc. 101(c)(3)

("The Tennessee Rules of Civil Procedure shall govern the following proceedings: . . . child custody proceedings under T.C.A. §§ 36-6-101, et seq. . . .").

Based on the requirements of section 36-1-106(a) and Rule 52.01, this court has frequently concluded that a trial court's order was deficient where it failed to make specific factual findings to support the above best interest factors. These cases included where the trial court's order contained only a single paragraph on the best interest of the child with no supporting factual findings, see **Renken v. Renken**, No. M2017-00861-COA-R3-CV, 2019 WL 719179, at \*5 (Tenn. Ct. App. Feb. 20, 2019), or where the trial court merely stated which factor favored which parent without any factual basis to show how the court came to that conclusion. *See* **Grissom**, 2019 WL 2158343, at \*6. In particular, in **Grissom**, we recently concluded that meaningful appellate review is not possible unless the trial court "puts forth some explanation as to how it reaches its decision in a best interest analysis." *Id.* (citing cases). In order to comply with its statutory duty, the trial court therefore is required to enter an order that "'demonstrate[s] consideration of the relevant factors'" in more than a conclusory fashion. **Grissom**, 2019 WL 2158343, at \*5 (quoting **Renken**, 2019 WL 719179, at \*5). Moreover, we held that based on Tennessee Supreme Court precedent concerning the high judicial function required of judicial decision-making, the appropriate remedy for the trial court's failure in that case was to vacate and remand to the trial court for more specific findings. *Id.* at \*7 (citing **Smith v. UHS of Lakeside, Inc.**, 439 S.W.3d 303, 312 (Tenn. 2014)).

On appeal, Father contends that the trial court's ruling does not meet the above requirements. From our review, we agree. Although the trial court's order mentions each statutory factor, the bulk of the trial court's consideration consists of a form-type document that allows the trial court to check a box as to each factor to allocate the factor either to the mother, the father, neither parent, or both parents equally. For example, the findings as to the first two factors are as follows**:**

*1.* That as to T.C.A. 36-6-106 (a)(1) " The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;" the court finds that the evidence favors:

☐ both equally; ☑ mother over father; ☐ father over mother; ☐ That the parties failed to present proof regarding this, or these, factors.

*2.* That as to T.C.A. 36-6-106 (a)(2): "Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;" the court finds that the evidence favors: ☐ both equally; ☑ mother over father; ☐ father over mother; ☐ That the parties failed to present proof regarding this, or these, factors.

With the exception of factor fifteen, discussed *infra*, all other factors are treated in the same manner, with a total of eight factors favoring Mother, zero factors favoring Father, and seven factors weighing equally or in favor of neither parent.

In our view, the trial court's consideration of the best interest factors is substantially similar to that found lacking in **Grissom**, where the trial court also noted each statutory factor and the other findings given by the trial court were which parent the factor favored. **Grissom**, 2019 WL 2158343, at *7. As we explained in **Grissom**,

> Although the trial court has indicated which section 36-6-106 factors favor Mother and Father respectively, there are no factual findings whatsoever to underpin this allocation. As such, we are left to wonder as to the trial court's reasoning for its allocation of each factor. Such a scenario clearly defeats the purpose of mandatory factual findings under Rule 52.01.

**Id.** (citing **Gooding v. Gooding,** 477 S.W.3d 774, 778 (Tenn. Ct. App. 2015) ("When the trial court does not find the facts specially or state separately its conclusions of law, we are left to wonder as to the factors employed in crafting the parenting schedule, and it inevitably leads to decisions delaying the resolution of issues on appeal and prolonging the uncertainty of the children's residency.")).

Unlike the trial court's order in **Grissom**, however, the trial court here did make additional findings of fact with regard to factor fifteen: "[a]ny other factors deemed relevant by the court." Tenn. Code Ann. § 36-6-106(a)(15). Specifically, the trial court found the following:

Putting the unrefuted testimony of each party together, the Court finds the following facts. The minor child . . . was born . . . to these two parties who were not, and never have been, married to each other. Said child resided at birth with her mother who, pursuant to Tennessee Code Annotated, Section 36-2-303, had custody. No mention was made by either parent to there being any visitation prior to August, 2017. The father began frequent visitation with said child August, 2017, and produced a calendar, exhibit 1, to support his testimony. He says that this visitation was disrupted December, 2017 through February, 2018, as the mother was upset with him over his unilateral decision to pull said child's front teeth.

It appears that the father decided to take his child to the dentist without consulting or discussing the matter with the mother. He then sent the mother a text to inform her that a tooth (may have been both front teeth, the Court's notes leave this open for doubt) was going to be pulled and she could come if she wished, for support. The mother testified that she was at work and unable to get to the dentist. The father testified that if the mother wasn't going to take care of his child's needs that he had to step in and take matters into his own hands.

This incident aside, the mother testified that she did not know why the father limited his visitation in December, January, and February, as she had never placed limits on him, he just failed to show. She further testified that she had to block the father's phone number on her phone and her other daughter's phone (said child's older sister) as the father would call over and over at any time of the day to the point that he was a nuisance. Moreover, the mother felt that the visitation was more with the father's mother than the father as the paternal grandmother did much of the pickup and return of said child. The mother testified that that she had agreed to the paternal grandmother participating in the visitation and she believed it was necessary because the father worked 7 days a week according to text messages she had received from him (the text was not offered into evidence). It appears from the mother's testimony that the calls may have had something to do with child support issues and the father's wish for her to accept $300.00 monthly rather than the amount ordered. The father's testimony, unrefuted, is that he is current on his obligation and pays his support by wage assignment, which includes a payment to reduce the retroactive support award of $23,532.00.

The mother complained that the father did not follow the visitation as set by the Court. Apparently a temporary visitation schedule was established at a court hearing June 21, 2018, and the father's counsel was directed to prepare an order which has never been filed with the court.

The Court finds from this testimony that joint parenting is not in said child's best interest due to the poor judgment of the father, his lack of

parenting and communication skills, and the relatively short duration of his
contact with his daughter over the term of her life.

Clearly then, the trial court in this case made a more significant effort to make factual findings that the trial court in ***Grissom***. The question, however, is whether the trial court's effort to explicate on what it deems a single statutory factor excuses the trial court's failure to make specific findings addressing the statutory factors actually specified in section 36-6-106(a). We must conclude that it does not.

Here, the trial court's order gives lip service to analyzing the mandatory factors contained in section 36-1-106(a). However, the trial court chose to provide a factual analysis with regard to only one of the fifteen factors contained in the statute. *See* ***Grissom***, 2019 WL 2158343, at \*9 (holding that it is not sufficient for the trial court to "cursorily mention[] each factor" without providing a factual basis for its decision). Providing rationales for legal and factual rulings are integral parts of judicial-decision making. *See generally* ***Smith***, 439 S.W.3d at 312. Indeed, the Tennessee Supreme Court has opined that one of the essential purposes of a judge is to adjudicate disputes; as such, judges are expected "to explain why a particular result is correct based on the applicable legal principles[.]" ***Id.*** Section 36-6-106(a) contains the applicable legal principles at issue in this case and mandates that the trial court consider specific factors in making best interest determinations. Rule 52.01 further directs the trial court to enter a written order containing findings of fact and conclusions of law to support its decision. Respectfully, we cannot conclude that the use a standardized, almost form-like document in which the only judicial analysis as to the vast majority of factors includes checking a box in favor of one parent or the other fulfills either the letter or the spirit of these requirements.

We recognize that the trial court's order does contain some factual findings that could be used to determine the basis for the trial court's decision. From our review, however, the trial court's findings are somewhat inconsistent. First, the trial court states that these findings are a compilation of the "unrefuted testimony of each party." The trial court confirms this finding earlier in the order with the statement that "[t]here was no material conflict in the testimony of either parent." The findings of the trial court, however, detail several points of contention regarding the facts of this case, particularly why Father's visitation was curtailed, which occurred either at Mother's insistence or due to Father's apathy. The order thereafter largely recounts the testimony of the parties without specifically resolving this dispute.

Ultimately, the trial court finds in favor of Mother as to this factor and the overall best interest of the child. Typically, from this ultimate ruling in favor of Mother, we would infer that the trial court generally credited Mother's testimony. *See* ***Edmunds v. Delta Partners, L.L.C.***, 403 S.W.3d 812, 824–25 (Tenn. Ct. App. 2012) (citing ***Richards v. Liberty Mut. Ins. Co.***, 70 S.W.3d 729, 733 (Tenn. 2002)) ("[A] trial court's finding on credibility may be implied from the manner in which the trial court decided the case.").

The issue in this case, however, is that the trial court does not state which testimony it credited and some of the recounted testimony conflicts with the Statement of the Evidence and exhibits filed in this appeal. For example, while the trial court may have credited Mother's testimony that it was Father's choice not to exercise his parenting time, the Statement of the Evidence provides that Father submitted evidence to show equal parenting time was being exercised and that Mother "was unable to provide a rational [sic] nor definite reason for limiting [Father's] parenting time." Again, although the Statement of the Evidence is not in the typical form, the trial court, by its inaction, approved it. *See* Tenn. R. App. P. 24(f). Moreover, the trial court's apparent decision to credit Mother's testimony about Father's work schedule directly conflicts with a letter from Father's employer that was made an exhibit at trial showing that Father works a typical full-time schedule. Finally, although the trial court finds that Father lacks parenting skills and has poor judgment, the trial court's order provides little illumination as to what facts or testimony led the trial court to these conclusions.

In sum, the trial court failed to make specific factual findings to support fourteen of the fifteen statutory factors contained in section 36-6-106(a). Instead, the bulk of the trial court's decision making is represented by check-marks. Although the trial court did make some factual findings to support a single factor and therefore the trial court's ultimate ruling, we simply cannot countenance this practice. "Determining a child's best interest is a fact-sensitive inquiry, and, depending upon the significance of certain facts, a single factor can control the outcome of this determination." **Solima v. Solima**, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015). Respectfully, the parties to a case involving the custody of their child deserve more attention from their fact-finder to the mandatory, statutory factors than a series of check marks. By choosing to issue its order in this manner, the trial court did not substantially comply with its high judicial function to independently review the facts of this case and provide a sufficient rationale for its ruling so as to facilitate meaningful appellate review. As such, the appropriate remedy is to vacate the judgment of the trial court and remand for the entry of an order in accordance with this opinion. *See* **Grissom**, 2019 WL 2158343, at *9.

## IV. CONCLUSION

The judgment of the Shelby County Juvenile Court is vacated, and this cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Takesha Curtiss Nelvis, for which execution will issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

- 10 -