IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 2, 2025

IN RE DEKLAN B.

Appeal from the Juvenile Court for Knox County
No. 117904            Timothy E. Irwin, Judge

_____

No. E2025-00914-COA-R3-PT

_____

In this case involving termination of a mother's parental rights to her child, the trial court allowed the mother's counsel to withdraw from representation at the beginning of trial when the mother did not appear. On appeal, the mother asserts that she did not have prior notice of the trial date and that her attorney did not provide her with notice of an intent to withdraw from representation. Based on the circumstances presented and applicable law, we vacate the trial court's termination of the mother's parental rights and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JEFFREY USMAN and VALERIE L. SMITH, JJ., joined.

Michael B. Menefee, Knoxville, Tennessee, for the appellant, Paige C.

Ben H. Houston, II, Knoxville, Tennessee, for the appellees, Carol B. and David B.

**OPINION**

I. Factual and Procedural Background

This action involves termination of the parental rights of the mother, Paige C. ("Mother"), to her minor child, Deklan B. ("the Child"), who was born in July 2018. The Child's biological father is Brett B. ("Father"). Mother had previously given birth to another child, Aybree Y., in August 2014 with a different partner. The Tennessee Department of Children's Services ("DCS") removed both children from Mother's custody in April 2021 by reason of allegations of dependency and neglect due to substance abuse.

On December 21, 2021, the Child was adjudicated dependent and neglected and placed in the custody of his paternal grandparents, Carol B. ("Grandmother") and David B. ("Grandfather") (collectively, "Grandparents"), by the Knox County Juvenile Court ("trial court"). The trial court granted to Mother supervised visitation with the Child.

On September 15, 2023, Aybree's father and stepmother filed a petition seeking to terminate Mother's parental rights to Aybree. On October 11, 2023, Grandparents and Father ("Petitioners") filed a petition seeking to terminate Mother's parental rights to the Child. Petitioners relied upon the following statutory grounds for termination: (1) abandonment by willful failure to pay financial support, (2) failure to manifest an ability and willingness to assume custody of the Child, and (3) persistence of the conditions leading to the Child's removal from Mother's custody. Mother filed an answer, denying the allegations. The trial court entered an order appointing a guardian *ad litem* for the Child.

On March 14, 2024, the trial court entered an agreed order concerning discovery. However, on April 1, 2024, all parties to both termination actions filed a joint motion to continue the trial dates that had previously been set for later that month, stating that further discovery was necessary. The trial court granted the motion that same day, directing the parties to "cooperate to set a new trial date." At some point, the attorneys agreed to a trial date of July 31, 2024, and Grandparents' counsel sent a notice of the upcoming trial date to Mother's counsel on April 8, 2024. According to Mother, she subsequently attended a deposition in May 2024 and was advised that a second deposition would occur at a later date.

Mother failed to appear for the July 31, 2024 trial. At the beginning of the hearing, Mother's counsel asked for a continuance, stating:

> This case has been going on for some time. Up until a few weeks ago, [Mother] had been very involved in this case. She did depositions. She brought me some discovery answers[.]
>
> I have -- I have tried to communicate with her several times this month, as recently as yesterday. I have not received a response from her. So I'm not really sure why she is not here for today's hearing. So I would ask the Court for a continuance on her behalf. She has -- the proof would have shown, had she been here, she's very bonded with [the Child]. She does visit. They have a very strong relationship. So it's kind of odd to me that she's not here.

The trial court denied the motion, citing the Child's need for permanency and the absence of any explanation for Mother's failure to appear. The court also noted Mother's failure to communicate with counsel. Counsel then orally moved to withdraw, citing her inability to

adequately represent Mother due to a lack of communication. She stated that Mother had failed to appear at a meeting scheduled earlier in the month and had failed to respond to telephone calls and emails. The court granted the motion from the bench, and the action proceeded to a hearing without Mother's counsel or Mother. On August 6, 2024, the trial court entered an order granting Mother's counsel's request to withdraw, *nunc pro tunc* to the July 31, 2024 hearing date.

Grandmother was the only witness to testify regarding termination of Mother's parental rights to the Child. At the conclusion of Grandmother's testimony, the trial court rendered findings from the bench, determining that Grandparents had proven by clear and convincing evidence the three statutory grounds for termination alleged in the petition. The trial then proceeded with other witnesses concerning termination of Mother's parental rights to Aybree.

On August 23, 2024, the trial court entered an order terminating Mother's parental rights to the Child. In that order, the court noted that all parties had appeared for the July 31, 2024 hearing except Mother and that Mother's counsel had appeared and requested a continuance on Mother's behalf, "which the Court denied for lack of good cause." The court reported that it had then granted an oral motion to withdraw made by Mother's counsel and that the trial had proceeded as scheduled in Mother's absence.

The trial court stated that based on the testimony of Grandmother, the exhibits presented to the court, and the record as a whole, the court had determined that clear and convincing evidence supported all three of the statutory grounds alleged in the termination petition. The court also determined that clear and convincing evidence demonstrated that terminating Mother's parental rights was in the Child's best interest. Accordingly, the court terminated Mother's parental rights to the Child.

On September 5, 2024, attorney Michael Menefee entered a notice of appearance and filed a motion to alter or amend and for a new trial on behalf of Mother. In the motion, Mother asserted that she had not received notice of the trial date until after the trial had occurred. Mother also asserted that she had no prior notice of her former counsel's intent to withdraw from representation. Mother claimed that her failure to appear at the hearing was the result of mistake, inadvertence, or excusable neglect and that she had not willfully failed to appear. Mother further stated that she had a meritorious defense to the action and that it was contrary to the Child's best interest to terminate her parental rights. Mother requested that the trial court set aside its order and grant her a new trial.

Mother attached an affidavit to the motion, wherein she explained that at her deposition in May 2024, she was asked to participate in a second deposition at a future date. Mother stated that she understood that the second deposition would be scheduled by counsel and that the trial would occur sometime thereafter. However, during a text conversation with Aybree's father on August 6, 2024, Mother learned that she had missed

- 3 -

the trial and that her parental rights had been terminated. Upon investigation, Mother discovered that her former counsel had sent her an email on July 27, 2024, advising her of the July 31, 2024 trial date, but Mother had not seen the email. She asserted that she had received no other correspondence or notification concerning the trial date even though her address and phone number had not changed. Mother further claimed that she maintained a meaningful relationship with the Child and that terminating her parental rights would not be in his best interest.

On June 2, 2025, the trial court entered an order denying Mother's motion for a new trial. In support, the court determined that Mother had "failed substantially to fulfill an obligation to her counsel and that the representation had been rendered unreasonably difficult due to failure to communicate with counsel or appear for trial." In addition, the court noted that Mother had acknowledged receipt of an email from her counsel notifying her of the trial date, and the court stated that Mother had failed to check her email. The court ultimately found that Mother had waived her right to counsel by failing to "participate in preparing for this litigation," failing to communicate with counsel, and failing to appear at trial. The court concluded: "This case was pending for a long time and the child deserves finality." Mother timely appealed.

## II. Issues Presented

Mother raises the following issues for our review, which we have restated slightly:

1.     Whether the trial court erred by proceeding with the trial without providing proper notice to Mother.

2.     Whether the trial court erred by denying Mother's request for a continuance.

3.     Whether the trial court erred by allowing Mother's counsel to withdraw at the beginning of trial without just cause or notice to Mother.

4.     Whether the trial court's findings of fact are supported by the evidence.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See*

Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

> The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).
>
> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

\* \* \*

> In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

This Court has previously explained with regard to review of a trial court's grant of an attorney's motion to withdraw:

> The decision to grant or deny an attorney's "request to withdraw as counsel is a matter addressed to the court's discretion." *Odom v. Odom*, No. M2018-00405-COA-R3-CV, 2019 WL 3546437, at \*4 (Tenn. Ct. App. Aug. 5, 2019). A trial court abuses its discretion if it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

*Smith v. Built-More, LLC*, No. M2021-00749-COA-R3-CV, 2023 WL 2261084, at \*2 (Tenn. Ct. App. Feb. 28, 2023).

IV. Mother's Right to Counsel

As a threshold matter, we must first address whether the trial court properly determined that Mother had effectively waived her right to counsel in this matter. As this Court has recognized:

> Although the United States Supreme Court has declined to hold that due process requires the appointment of counsel in each and every parental termination case, *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 31 (1981), "Tennessee statutorily provides the right to appointed counsel for indigent parents in every parental termination proceeding." *In re Carrington H.*, 483 S.W.3d at 527; *see also* Tennessee Code Annotated section 37-1-126(a)(2)(B)(ii) ("A parent is entitled to representation by legal counsel at all stages of any proceeding under this part in proceedings involving . . . [t]ermination of parental rights pursuant to § 36-1-113."). Consequently,

- 6 -

there is no dispute that Mother initially had a statutory right to be represented by counsel in the termination proceedings in the trial court, nor does anyone dispute Mother's right to a fundamentally fair termination proceeding.

While a parent's right to appointed counsel in a termination of parental rights proceeding is well-established in Tennessee, this Court has also acknowledged that where a parent fails to adequately cooperate or communicate with their counsel before trial, the client may have impliedly waived the "right to appointed counsel by his or her conduct." *In re Jamie B.*, No. M2016-01589-COA-R3-PT, 2017 WL 2829855, at *4 (Tenn. Ct. App. June 30, 2017); *see also State Dep't of Children's Servs. v. Agbigor*, No. M2000-03214-COA-R3-JV, 2002 WL 31528509, at *5-6 (Tenn. Ct. App. Nov. 15, 2002) (holding that the right to counsel was waived where father left the country before trial, failed to contact and otherwise cooperate with his attorney, and returned only shortly before the termination hearing); *In re M.E.*, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at *12 (Tenn. Ct. App. Aug. 16, 2004) ("Failure to cooperate with appointed counsel can constitute a waiver of the right to appointed counsel."). . . .

In evaluating both [counsel's] request to withdraw and whether Mother effectively waived her right to counsel, both this Court and the trial court must "consider the principles embodied in the [Tennessee] Rules of Professional Conduct . . . ." *In re Jamie B.*, 2017 WL 2829855, at *6 (citing *Zagorski v. State*, 983 S.W.2d 654, 660 (Tenn. 1998)); *see also Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004) (citing *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995)) (holding that a trial court's "discretion is not unbounded, it must be based on proof and appropriate legal principles"). The Rules of Professional Conduct provide that a lawyer may withdraw from representation in a number of circumstances. *See* Tenn. Sup. Ct. R. 8, Rule 1.16(b). *But see* Tenn. Sup. Ct. R. 8, Rule 1.16(a) (outlining those circumstances where withdrawal is mandatory). Relevant to this appeal, a lawyer may withdraw when "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled[.]" *Id.* at Rule 1.16(b)(5). Another instance where withdrawal may be appropriate occurs when "the representation . . . has been rendered unreasonably difficult by the client." *Id.* at Rule 1.16(b)(6). Rule 1.16 provides, however, that a lawyer "shall, to the extent reasonably practicable, take steps to protect the client's interests" upon the lawyer's withdrawal. Tenn. Sup. Ct. R. 8, Rule 1.16(d). "Depending on the circumstances, protecting the client's interests may include . . . giving reasonable notice to the client[.]" *Id.* Moreover, even where a client has effectively waived the right to counsel, this Court recently held that "[a]n attorney appointed by the

juvenile court for an indigent party in a parental termination case must seek leave of the court to withdraw" as counsel. *In re Jamie B.*, 2017 WL 2829885, at \*5 (citing Tenn. Sup. Ct. R. 13, Sec. 1(e)(5)).

*In re A.P.*, No. M2017-00289-COA-R3-PT, 2019 WL 1422927, at \*3-4 (Tenn. Ct. App. Mar. 29, 2019) (footnotes omitted).

Here, the record contains no indication that Mother's trial counsel was appointed. However, even if Mother were represented by retained counsel below, we determine that she nonetheless maintained the same right as an indigent parent with appointed counsel to "representation by legal counsel at all stages of any proceeding under this part in proceedings involving . . . [t]ermination of parental rights pursuant to § 36-1-113," *see* Tenn. Code Ann. § 37-1-126 (a)(2)(B), and that she was also "constitutionally entitled to fundamentally fair procedures" in the termination proceedings, *see In re Carrington H.*, 483 S.W.3d at 522. Our Rules of Professional Conduct draw no distinction between the withdrawal of an appointed attorney and the withdrawal of retained counsel, and we discern no reason to recognize any such distinction. *See, e.g.*, Tenn. Sup. Ct. R. 8, RPC 1.16(b).

Grandparents argue that this Court's decision in *In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at \*1 (Tenn. Ct. App. Dec. 29, 2010), is controlling in this matter. In *Elijah B.*, the father whose parental rights were at issue conceded that he had received prior verbal notice of the termination trial date from his attorney, but he failed to appear for the trial. *Id.* at \*5. The father's counsel also asserted that the father had failed to communicate with counsel for more than one month prior to the hearing. *Id.* at \*4. On appeal, the father urged that the verbal notice of the upcoming trial date was insufficient; however, he did not dispute having actual knowledge of the trial date, nor did he dispute his counsel's assertions that he had failed to maintain communication for some time prior to the trial. *Id.* at \*6. Based on these circumstances, the *Elijah B.* Court found that the father had effectively waived his right to counsel by his failure to cooperate and that the trial court's decision to allow the attorney to withdraw at the beginning of trial was not an abuse of discretion. *See id.*

More recent cases addressing this issue, however, have limited *Elijah B.*'s application. For example, this Court considered a similar situation but reached a different outcome in *In re Jamie B.*, No. M2016-01589-COA-R3-PT, 2017 WL 2829855 (Tenn. Ct. App. June 30, 2017). When the parents failed to appear for trial in *Jamie B.*, the mother's counsel reluctantly moved to withdraw, admitting that he had been in limited contact with the mother and stating that he had expected her to appear.[1] *Id.* at \*2. The mother ultimately showed up late, after the trial had begun and after the court had granted the attorney's motion to withdraw. *Id.* The trial court informed the mother of her counsel's withdrawal,

---

[1] Although not entirely clear from *In re Jamie B.*, it appears that the mother did have prior notice of the trial date.

but when the mother expressed a desire to continue the representation, the court allowed the mother and her counsel time to discuss the issue. *Id.* at *3. The attorney then informed the court that the mother seemed unsure how to proceed and renewed his motion to withdraw, which the court granted. *Id.* The trial court proceeded with the trial, allowing the mother to testify on her own behalf and to call witnesses. *Id.* At the conclusion of the trial, the trial court terminated the mother's parental rights. *Id.* at 4.

On appeal in *Jamie B.*, this Court vacated the trial court's judgment. *Id.* at *6. In analyzing whether the trial court had abused its discretion by permitting the mother's counsel to withdraw at the beginning of trial, the *Jamie B.* Court reviewed the Rules of Professional Conduct found in Tennessee Supreme Court Rule 8, which explain that withdrawal is permissible in certain situations, such as when "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled" or when "the representation . . . has been rendered unreasonably difficult by the client." *Id.* at *6 (quoting Tenn. Sup. Ct. R. 8, RPC 1.16(b)). The Court explained:

> Based on his statements on the day of the trial, Mother's counsel based his request to withdraw on his difficulties in communicating with his client and her failure to appear for the trial. As such, we assume that counsel believed withdrawal was appropriate because Mother had "fail[ed] substantially to fulfill an obligation to [counsel]" and/or "the representation . . . ha[d] been rendered unreasonably difficult by [Mother]." *See* Rules of Prof'l Conduct R. 1.16(a)(5) & (6).

*Id.* at *6.

Upon review, the *Jamie B.* Court determined that the proof was insufficient to demonstrate that the mother had rendered the attorney's representation unreasonably difficult or that she had failed to fulfill her obligations to counsel. *Id.* As the Court explained:

> The information provided by counsel regarding his efforts to communicate with his client was limited as was the court's questioning. Further, counsel did not indicate whether he provided Mother any prior warning that he might withdraw.

> As for rendering the representation unreasonably difficult, we agree that a failure to communicate and the failure to appear for trial can render a representation unreasonably difficult. *See* [*State Dep't of Children's Servs. v.*] *Agbigor*, [No. M2000-03214-COA-R3-JV,] 2002 WL 31528509, at *5-6 [(Tenn. Ct. App. Nov. 15, 2002)]. But, in this case, counsel resumed his representation after Mother tardily appeared for the trial. After resuming the

representation, counsel then moved to withdraw again stating he was "not prepared."

> Under these circumstances, we conclude it was error for the court to grant Mother's counsel leave to withdraw. We are hard pressed to divine how counsel thought he might be better prepared after a brief meeting with Mother. To the extent that counsel was relying upon his apparent past difficulties in communicating with Mother, counsel failed to establish Mother's obligations in that regard or that he had provided suitable notice that he would withdraw if Mother failed to satisfy those obligations.

*Id.*

Two years later, this Court reached a similar conclusion in *In re A.P.*, No. M2017-00289-COA-R3-PT, 2019 WL 1422927 (Tenn. Ct. App. Mar. 29, 2019). In that case, the mother's counsel was allowed to withdraw at the beginning of trial when the mother did not appear. *Id.* at *1. The attorney informed the trial court that he had maintained some contact with the mother and had previously informed her of the trial date. *Id.* at *1-2. The trial court proceeded with the termination trial following the attorney's withdrawal and terminated the mother's parental rights. *Id.* at *2.

On appeal, the mother in *In re A.P.* contended that she had not been notified of the trial date or her attorney's intent to withdraw from representation. *Id.* This Court accordingly vacated the trial court's judgment and remanded for a new trial, determining that the evidence was insufficient to show that the mother had prior notice of the trial date and effectively disregarding the attorney's statements to the contrary because he could not definitively state when he had contacted the mother. *Id.* at *5-6. The Court noted that the record did not "show that [counsel] made any attempt to give Mother notice [of his intent to withdraw] and causes this court doubt as to whether Mother had notice of the trial date." *Id.* at *6. The Court determined that based on the "limited information contained in the record," we simply cannot say that there is a sufficient basis for us to conclude that Mother's alleged shortcomings amount to a waiver of her right to counsel." *Id.*

Similarly, in *In re Tavarius*, No. M2020-00071-COA-R3-PT, 2020 WL 7479411, at *2 (Tenn. Ct. App. Dec. 18, 2020), the father whose rights were at issue failed to appear for the termination hearing, and the trial court allowed his attorney to withdraw because the attorney said he had not had contact with the father for a month. The father appeared on the second day of trial and made an oral motion to continue so that he could secure new counsel. *Id.* The trial court denied the motion and told the father that he would have to proceed *pro se*. *Id.* Although the father conceded that he had prior notice of the trial date, he stated that he had simply gotten the dates confused (which is why he appeared on the second day). *Id.* The trial court ultimately terminated the father's parental rights. *Id.*

On appeal, the *Tavarius* Court vacated the termination and remanded for a new trial, finding that "unlike in *Elijah B.*, it is not clear that [the father] simply chose not to appear on the first day of trial." *Id.* at *6. The Court also noted that "similar to *In re Jamie B.* and *In re A.P.*, the record contains no evidence supporting [the father's] attorney's allegations that he was unable to communicate with his client because the juvenile court made no inquiry about the attorney's efforts to communicate with [the father]." *Id.* The Court considered the fact that the father had informed the trial court that his attorney had not communicated with him despite having his phone number, address, and email address. *Id.* The Court also considered the fact that the father's attorney had not provided him with any prior notice that the attorney might withdraw. *Id.* The Court therefore concluded that the record did not support a finding that the father had waived his right to counsel. *Id.; see also In re Metric D.*, No. M2023-00700-COA-R3-PT, 2024 WL 3948615, at *2, 5 (Tenn. Ct. App. Aug. 27, 2024) (vacating the trial court's termination of the father's parental rights because the father's attorney was allowed to withdraw before trial when the father had prior notice of the trial date and failed to appear because there was "no indication that Father's attorney had ever warned Father of his intent to withdraw should Father not appear" and the record was unclear as to the father's status on the date of the hearing and whether he had actually been released from incarceration); *In re Lila F.*, No. E2023-01112-COA-R3-PT, 2024 WL 1480174, at *1 (Tenn. Ct. App. Apr. 5, 2024) (vacating the trial court's termination of the mother's parental rights because the mother's attorney was allowed to withdraw before trial when the mother had prior notice of the trial date and did not appear on time despite the fact that the mother had communicated with her counsel that morning and stated that she had a job interview but was on the way).

In the instant action, Mother's counsel and the trial court had the following exchange when Mother did not appear for trial:

Mother's Counsel:     First, I would ask the Court for a continuance on behalf of my client. This case has been going on for some time. Up until a few weeks ago, [Mother] had been very involved in this case. She did depositions. She brought me some discovery answers[.]

I have -- I have tried to communicate with her several times this month, as recently as yesterday. I have not received a response from her. So I'm not really sure why she is not here for today's hearing. So I would ask the Court for a continuance on her behalf. She has -- the proof would have shown, had she been here, she's very bonded with [the Child]. She does visit. They have a very strong relationship. So it's kind of

- 11 -

|  |  |
|---|---|
|  | odd to me that she's not here. So for those reasons, I would ask for a continuance on her behalf. |
| The Trial Court: | Well, your first words kind of lead to my ruling. This has been going on for some time. And children need the certainty of knowing where they're going to be. They need to understand that this is my home; that I'm not going to have to move; that I'm not going anywhere. And they've been in limbo long enough. So I'm going to deny the motion unless you've got someplace specific -- some specific hardship that you can tell me about: That she's in the hospital; that she's got some terrible disease that she can't get here. But you don't know, because she hasn't been in contact with you. So I'm going to deny the motion to continue. Do you have another motion? |
| Mother's Counsel: | Yes, Your Honor. Based on those reasons, I would ask that I would be allowed to withdraw from representation of [Mother] on both of these cases. Like I said, I have reached out to her via email and phone numerous times. We had a meeting scheduled earlier this month that she no-showed for, and I have not heard from her since that time. At this point, I cannot adequately represent her. |
| The Trial Court: | Submit your orders and I'll sign them. |

The trial court then excused Mother's counsel and proceeded with the termination trial. Upon hearing Grandmother's testimony, the trial court terminated Mother's parental rights.

According to Mother's affidavit filed with the motion to alter or amend, Mother had learned that the trial had taken place and that her parental rights had been terminated while corresponding via text message with Aybree's father a few days after the trial. Mother attached copies of text messages demonstrating that she had expressed shock and dismay upon learning this information. In her affidavit, Mother explained that at her deposition in May 2024, she was asked to participate in a second deposition at a future date. Mother stated that she understood that the second deposition would be scheduled by counsel and that the trial would occur sometime thereafter. Mother further explained that after learning

from Aybree's father that the trial had occurred, she had gone to the trial court and spoken with a clerk, who informed her that the trial had, in fact, occurred in Mother's absence.

Mother stated that she then contacted her former counsel's office and was informed that her counsel had withdrawn from representation and that an email had previously been sent to Mother informing her of the trial date. Upon investigation, Mother discovered that her former counsel had sent her an email on Saturday, July 27, 2024, advising her of the July 31, 2024 trial date, but Mother asserted that she had not seen the email until August 6, 2024. Mother further explained that she had received no other correspondence or notice concerning the trial date despite the fact that her address and phone number had not changed. Mother claimed that in the past, her attorney had always called her to inform her of important dates, but Mother maintained that she had received no such notice with regard to the trial date on this occasion. Mother also stated that her attorney had not provided any prior notice of her intent to withdraw. Notwithstanding Mother's averments, the trial court denied the motion for new trial.

After thorough consideration, we conclude that Mother's circumstances are most similar to those of the mother in *In re A.P.*, 2019 WL 1422927, at *1-2, who had likewise claimed that she was unaware of the trial date prior to trial or of her attorney's intent to withdraw. Much like in *In re A.P.*, the appellate record here contains a dearth of evidence that Mother knew of the trial date and simply failed to show up, which distinguishes this case from *In re Elijah B. See in re A.P.*, 2019 WL 1422927, at *5. Moreover, even in the *Metric* and *Tavarius* cases, wherein the parents <u>did</u> have actual notice of the trial date, this Court nonetheless vacated the terminations because the parents' attorneys had been allowed to withdraw when there was a lack of proof that (1) the parents had simply failed to appear or (2) their attorneys had given prior warning of an impending withdrawal. *See In re Metric D.*, 2024 WL 3948615, at *2, 5; *In re Tavarius*, 2020 WL 7479411, at *6.

We reiterate that the Rules of Professional Conduct found in Tennessee Supreme Court Rule 8 provide, *inter alia*, that withdrawal is permissible if:

(1)     withdrawal can be accomplished without material adverse effect on the interests of the client;

* * *

(5)     the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

- 13 -

(6)     the representation will result in an unanticipated and substantial financial burden on the lawyer or has been rendered unreasonably difficult by the client;

(7)     other good cause for withdrawal exists; or

(8)     the client gives informed consent confirmed in writing to the withdrawal of the lawyer.

RPC 1.16(b).  Moreover, subsection (d) of RPC 1.16 provides:  "A lawyer who is discharged by a client, or withdraws from representation of a client, shall, to the extent reasonably practicable, take steps to protect the client's interests.  Depending on the circumstances, protecting the client's interests may include:  (1) giving reasonable notice to the client[.]"

This Court has interpreted the above provisions as directing that an attorney who intends to withdraw due to the client's "fail[ure to] substantially . . . fulfill an obligation to the lawyer" or because the representation "has been rendered unreasonably difficult by the client" should provide the client with prior notice of counsel's intent to withdraw.  *See In re A.P.*, 2019 WL 1422927, at \*6 ("Although it is apparent to us that notice to a client before withdrawal from representation is the clear best practice under these circumstances, this went unacknowledged in this case."); *see also In re Metric D.*, 2024 WL 3948615, at \*5; *In re Tavarius*, 2020 WL 7479411, at \*6.  Our Supreme Court has further recognized that prior notice should be given by the attorney before withdrawing due to "other good cause" under subsection (b)(7).  *See Bd. of Prof'l Resp. v. Prewitt*, 647 S.W.3d 357, 377 (Tenn. 2022).

Moreover, as in *In re A.P.*, we determine that the trial court's limited exchange with Mother's counsel at the outset of the hearing was insufficient to establish that Mother's actions amounted to an effective waiver of her right to counsel.  *See* 2019 WL 1422927, at \*6.  As stated in that case:

> While the trial court briefly questioned [the mother's counsel] about the last time he had contact with his client, at no point did the trial court attempt to discern whether Mother was aware of [her counsel's] intent to withdraw from his representation.  As such, the trial court's inquiry into [the mother's counsel's] actions can only be described as "limited" at best.  There is simply no evidence in the record, other than [her counsel's] unsworn statements that he had not had contact with Mother since November of 2016, that Mother's actions amounted to an effective waiver of her right to be represented by appointed counsel.  *See In re Jamie B.*, 2017 WL 2829855, at \*6 ("As for a failure to fulfill an obligation to counsel, we find the facts in the record insufficient to support such a finding.  The information provided by counsel

- 14 -

regarding his efforts to communicate with his client was limited as was the court's questioning.").

*Id.* Similarly, here, the trial court's questioning of Mother's counsel was limited, as was the information provided by her counsel. Counsel's unsworn statements regarding her attempts to contact Mother by telephone and email after Mother had failed to appear for "a meeting scheduled earlier this month" were disputed by Mother's sworn affidavit, wherein she stated that she had received no such contact. In addition, the trial court did not inquire of counsel whether she had provided Mother with notice of her intent to withdraw if Mother failed to appear. *See id.*

Based on this Court's Opinion in *In re A.P.*, which we find factually similar to the case at bar, we determine that the proof was insufficient to establish that Mother waived her right to be represented by counsel. We therefore conclude that the trial court erred by allowing Mother's counsel to withdraw at the beginning of the termination trial. We vacate the trial court's judgment terminating Mother's parental rights and remand this matter to the trial court for a new trial. Consequently, all other issues raised in this appeal are pretermitted. *See id.* at *7.

## V. Conclusion

For the foregoing reasons, the trial court's judgment terminating Mother's parental rights to the Child is vacated, and this matter is remanded to the trial court for a new trial. Costs on appeal are assessed to the appellees, Carol B. and David B.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE